PER CURIAM.
 

 | Jn this case, we are called upon to decide whether the lower courts court erred in denying defendant’s motion to compel arbitration. For the reasons that follow, we conclude that the arbitration clause at issue is valid, and therefore reverse the judgments of the lower courts.
 

 UNDERLYING FACTS AND PROCEDURAL HISTORY
 

 In 2004, Shaun Coleman and his wife, Lisa Coleman, contacted Jim Walter Homes, Inc. (“JWH”) regarding the building of a residential home in Natchitoches, Louisiana. Robert Fry, a salesman for JWH assisted the Colemans in selecting a home and negotiating the terms of the sale, including financing through JWH. A closing was scheduled for December 16, 2004.
 

 On that date, Mr. Coleman arrived at JWH’s office in Shreveport, Louisiana without his wife. Mr. Fry went through each of the documents to be signed at the closing, and asked Mr. Coleman to either initial or sign each document. Mr. Fry advised Mr. Coleman to ask any questions he had about any of the documents before signing them, and encouraged Mr. Coleman to speak up if he was unsure about something.
 

 |2The first document presented to Mr. Coleman was the building contract. On page two of that contract, in all capital letters, was the following provision:
 

 IN CONNECTION WITH THE FOREGOING, BUYER ACKNOWLEDGES HAVING READ, UNDERSTOOD AND ACCEPTED THE ARBITRATION AGREEMENT SET FORTH IN EXHIBIT “D” ATTACHED HERETO AND INCORPORATED BY THIS REFERENCE.
 

 Mr. Coleman signed his initials immediately after this clause in the contract.
 

 Mr. Coleman was also presented with a two and half page document entitled “Arbitration Agreement.” That document provided, in pertinent part:
 

 The parties agree that any controversy (whether asserted as an original claim, counterclaim, cross claim or otherwise) arising out of or relating to this Agreement, or the breach thereof, or any negotiations leading up to the making of this Agreement, or the House that is the subject of this Agreement, or any insurance sold or in connection with this Agreement, or any relationship resulting from any of the foregoing, whether asserted in tort, cont[r]act or warranty, or as a federal or state statutory claim, and whether arising before, during or after performance of this Agreement, shall be settled under this Arbitration Agree
 
 *181
 
 ment in accordance with the procedures specified below.
 

 [[Image here]]
 

 NOTICE: Seller and Buyer hereby acknowledge and voluntarily waive the right to trial by jury of any controversy between them that is covered by this Arbitration Agreement. Buyer acknowledges that he/she/they are waiving their right to a jury trial that may otherwise exist by executing this Agreement.
 

 By signing below, you are agreeing to have controversies described in this Arbitration Agreement decided by binding arbitration, and you are giving up any rights you might possess to have those matters litigated by a jury trial or in a court, except to the extent specifically provided for under this Agreement. By signing in the space below you are giving up your judicial rights to discovery and appeal except to the extent that they are specifically provided under this Agreement. If you refuse to submit to arbitration after signing this provision, you may be compelled to arbitrate under federal or state law. By signing in the space below, you 13are acknowledging that your agreement to this arbitration provision is freely and voluntarily given.
 

 [[Image here]]
 

 I/We have read and understand the foregoing, waive our right to a jury trial, and agree to submission of all controversies to binding arbitration in accordance with this Arbitration Agreement, [emphasis in original]
 

 Mr. Coleman initialed each page of the document and signed the last page.
 

 On July 7, 2006, Mr. Coleman filed a “Petition for Declaratory Judgment” against JWH in the Tenth Judicial District Court for the Parish of Natchitoches. In his petition, Mr. Coleman alleged that during construction of the home, “all material had been stored outside without cover, causing them to degrade and be unfit for the purpose intended.” Mr. Coleman further alleged that the home flooded as a result of defective water piping, causing the home’s floor covering to be destroyed, and resulting in an infestation of mold. Mr. Coleman sought cancellation of the building contract, damages, and removal of the home from his property.
 

 JWH responded to Mr. Coleman’s petition by filing a dilatory exception of prematurity and a motion to compel arbitration and stay proceedings.
 
 [1]
 
 In support, JWH asserted that the parties entered into a written arbitration agreement which provided that “any controversy” arising out of or relating to the building contract should be settled through arbitration.
 

 Mr. Coleman opposed JWH’s exception and motion. He argued that the arbitration agreement was unenforceable “due to an error of law on his part and the fact that he did not understand that by agreeing to arbitration he was giving up his | ¿rights to hire an attorney and to file suit in the Tenth Judicial District Court of Natchitoches Parish, Louisiana, in the event that defendant breached the contract.”
 

 
 *182
 
 The matter proceeded to a hearing before the district court. At the conclusion of the hearing, the district court denied JWH’s motion to compel arbitration and stay proceedings. In written reasons for judgment, the district court found that the arbitration agreement “is unenforceable due to the lack of consideration given by the defendant in return for plaintiffs waiver of his right to a jury trial in the district court.” The district court explained that nearly a month before the date of closing, the parties had agreed on the design of the house and price to be paid. The court reasoned that there was “no evidence that the arbitration agreement was included in the original terms of the agreement, and therefore the unilateral addition of the arbitration agreement at closing renders the agreement unenforceable.” Further, the district court reasoned that Mr. Coleman was not required to sign the arbitration agreement in order to complete the sale, but believed that he was required to do so; as a result, the court concluded Mr. Coleman signed the agreement in error, and this error vitiated his consent.
 

 From this ruling, JWH filed an application for supervisory review. The court of appeal denied the writ, with one judge dissenting.
 

 JWH then applied to this court. We granted the writ and remanded the case to the court of appeal for briefing, argument and opinion.
 
 Coleman v. Jim Walter Homes, Inc.,
 
 07-1956 (La.12/7/07), 969 So.2d 616.
 

 On remand, the court of appeal affirmed the district court’s judgment.
 
 Coleman v. Jim Walter Homes, Inc.,
 
 07-1574 (La.App. 3 Cir. 5/7/08), 982 So.2d 341, In its opinion, the court of appeal found Mr. Coleman’s consent to the arbitration agreement was vitiated by error. The court stated in pertinent part:
 

 | sin the present case, we find the Cole-mans were unaware that relinquishing their right of access to the courts was a condition of the sale when they were negotiating the terms of the contract with JWH. There was no mention of an arbitration clause during any of the discussions with Mr. Fry. JWH unilaterally added the arbitration clause to the final contract of sale. Had the Colemans refused to sign the document, the process would have stopped. We find the Cole-mans’ consent to arbitration was vitiated by error. The parties agreed on the terms of the sale before closing. Unilateral insertion of the arbitration clause by JWH was not part of the original bargain the parties consented to perfect. Accordingly, we affirm the decision of the trial court denying JWH’s exception of prematurity and the motions to stay proceedings and compel arbitration.
 

 Upon JWH’s application, we granted the writ to review the correctness of this ruling.
 
 Coleman v. Jim Walter Homes, Inc.
 
 08-1221 (La.10/3/08), 992 So.2d. 997 The sole issue presented for our consideration is whether the arbitration agreement between the parties is valid and enforceable.
 

 DISCUSSION
 

 Pursuant to La. R.S. 9:4202. a court shall stay the trial of an action in order for arbitration to proceed if any party applies for such a stay and shows (1) that there is a written arbitration agreement, and (2) the issue is referable to arbitration under that arbitration agreement, as long as the applicant is not in default in proceeding with arbitration.
 
 International River Center v. Johns-Manville Sales Corp.,
 
 02-3060, p. 3 (La.12/3/03), 861 So.2d 139, 141. In this case, Mr. Coleman does not dispute that a written arbitration exists or that the issue in his suit is referable to arbitration under
 
 *183
 
 that agreement. Rather, the crux of his argument is that the arbitration agreement is unenforceable due to an error of consent. According to Mr. Coleman, it was his belief that the parties had confect-ed an oral argument regarding the design of the home and the price to be paid, with no mention of the arbitration provision. He maintains JWH ] B-unilaterally inserted the arbitration agreement into the final documents, and he signed this agreement in error.
 

 Article 1949 of the Civil Code provides, “[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.” In the instant case, it is clear the principal cause of the contract between the parties was the building of a home. There is no indication that the procedure for future litigation over the contract was a cause without which the obligation would not have been incurred.
 
 See In re J.M.P.,
 
 528 So.2d 1002 (La.1988) (“[e]rror vitiates consent only when a party’s consent has been determined by it and when the other party knew or should have known that the matter affected by the error was the cause of the obligation for the party in error”). Thus, to the extent there was unilateral error by Mr. Coleman concerning the arbitration agreement, we do not find such error is sufficient to vitiate his consent to the contract.
 

 Moreover, we see little support for Mr. Coleman’s assertion that the parties reached a complete oral agreement regarding the building of the house before the closing documents were signed. It is obvious that the parties contemplated additional documents, such as a mortgage and promissory note, which the law requires to be reduced to writing in order to be effective. Where the parties intend to reduce their negotiations to writing, they are not bound until the contract is reduced to writing and signed by them.
 
 Breaux Brothers Construction Co. v. Associated Contractors, Inc.,
 
 226 La. 720, 77 So.2d 17, 20 (1954).
 

 A review of the written documents signed by Mr. Coleman in this matter reveal that the arbitration provisions are set forth in clear and unambiguous language. There is no indication the arbitration language was hidden in small type in the documents; |7to the contrary, the arbitration language is highlighted in both the building contract and the arbitration agreement.
 

 In
 
 Aguillard v. Auction Management Corp.,
 
 04-2804 (La.6/29/05), 908 So.2d 1, we explained that a party who signs a written agreement is presumed to know its contents:
 

 The Civil Code recognizes the right of individuals to freely contract. La. Civ. Code art. 1971;
 
 see also,
 
 Art. I, § 23 of the Louisiana Constitution of 1974. “ ‘Freedom of contract’ signifies that parties to an agreement have the right and power to construct their own bargains.”
 
 Louisiana Smoked Products, Inc. v. Savoie’s Sausage and Food Products, Inc.,
 
 96-1716 (La.7/1/97), 696 So.2d 1373, 1380
 
 (citing
 
 Blake D. Morant,
 
 Contracts Limiting Liability: A Paradox with Tacit Solutions,
 
 69 Tul.L.Rev. 715 (1995)).
 

 It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him.
 
 See, e.g., Tweedel v. Brasseaux,
 
 433 So.2d 133, 137 (La.1983) (stating: “The presumption is that parties are aware of the contents of writings to .which they have affixed their signatures
 
 *184
 
 ... The burden of proof is upon them to establish with reasonable certainty that they have been deceived.” “If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen atten-tatively whilst this is being done.”). The plaintiff in this case signed the contract “acknowledg[ing] that he ... read and [understood the]
 
 AUCTION TERMS & CONDITIONS
 
 and agree[d] to be bound thereby.”
 

 Similarly, in the instant case, it is undisputed that Mr. Coleman signed the arbitration agreement, which clearly provided, “I/We have read and understand the foregoing, waive our right to a jury trial, and agree to submission of all controversies to binding arbitration in accordance with this Arbitration Agreement.” Having signed this agreement, Mr. Coleman cannot seek to avoid its obligations by contending that he did not read or understand it. As this court observed over a century ago, “[w]e have only to say that the law does not compel people to read or to inform themselves of the ^contents of instruments which they may choose to sign, but that, save in certain exceptional cases, it holds them to the consequences, in the same manner and to the same extent as though they had exercised those rights,.... ”
 
 Ray v. McLain,
 
 106 La. 780 at 790, 31 So. 315 at 319 (1901).
 

 In summary, we find that the arbitration agreement between the parties is valid and enforceable. Because a written arbitration agreement exists, and the issue is referable to arbitration under that arbitration agreement, La. R.S. 9:4202 mandates that the trial must be stayed and the matter referred to arbitration. The lower courts erred in holding otherwise. Accordingly, we reverse the judgment of the court of appeal, and direct that this matter be submitted to arbitration.
 
 [2]
 

 DECREE
 

 For the reasons assigned, the judgment of the court of appeal is reversed. The motion to compel arbitration and stay proceedings filed by Jim Walter Homes, Inc. is hereby granted. Each party is to bear its own costs.
 

 [1]
 

 . Mr. Coleman raised a procedural objection to JWH’s exception of prematurity, arguing that JWH waived the exception by attending a pre-trial conference. As a result, JWH filed an alternative motion to compel arbitration and stay proceedings in the event its exception of prematurity was found to be waived, The district court subsequently ruled that the exception of prematurity was timely, as it was filed prior to the answer.
 
 See
 
 La.Code Civ. P. art, 928(A).
 

 [2]
 

 . We note that during oral argument before this court, the attorney for JWH represented to this court that there were no procedural impediments resulting from the length of time during which this matter was pending which would preclude Mr. Coleman from presenting his demands for arbitration.