STEWART, J.
1 TThe defendants in this matter filed exceptions of prematurity and sought a stay pending arbitration of the plaintiffs’ claims as required by an arbitration provision in written agreements signed by each of the plaintiffs. The trial court denied the exceptions of prematurity and the motions to stay the proceedings. After this court denied the defendants’ writs, they sought relief before the Louisiana Supreme Court, which granted writs and remanded the matter to this court for briefing, argument, and a full opinion. Hanlon v. Monsanto Ag Products, LLC, 2013-0169 (La.3/1/13), 108 So.3d 781. For the reasons explained in this opinion, we find the arbitration provisions enforceable and reverse the trial court’s rulings on the exceptions of prematurity and motions to stay.
FACTS
The plaintiffs are cotton farmers in the parishes of Madison, Tensas, Catahoula, and East Carroll. They filed a redhibition action claiming that cotton seed known as Delta Pine 0949 B2RF planted during the 2010 season was defective. The defendants, who are referred to collectively in this opinion as “Monsanto,” include the alleged manufacturers of the seed, namely, Monsanto Ag Products, LLC, Delta Pine and Land Co., Pharmacia Corp.,[1] and the alleged sellers of the seed, namely, Tensas Farm Services, Inc., Helena Chemical Company, and Crop Production Services, Inc.
In response to the redhibition action, Monsanto filed an exception of prematurity, or alternatively, a motion to stay. Monsanto asserted that each 12of the plaintiffs had signed a written “Technology / Stewardship Agreement” (hereinafter the “Technology Agreement” or “the agreement”), which includes an arbitration provision that requires claims, including claims against sellers, related to the performance of the cotton seed to be resolved through binding arbitration. Copies of the agreement signed by the plaintiffs were admitted into evidence. Monsanto explained that it requires all growers who purchase seeds containing its patented *538 transgenic traits to sign the agreement.[2] In support of its exception and motion, Monsanto showed that 16 of the plaintiffs had signed the agreement in 2010; some of these had also signed the agreement in other years as well.[3] Eleven plaintiffs had signed the 2001 agreement, and some of these had also signed in either 2011 or 2012. Monsanto asserted that the agreement has contained an arbitration provision since 2001 and that the 2010 version is typical of preceding versions.
Monsanto’s 2010 agreement consisted of four pages. The arbitration provision, which is located on the bottom right of the first page, reads as follows:
Is2. BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:
Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower’s cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and / or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U S C Sec 1 et seq and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association (“AAA”). The term “seller” as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto’s receipt of the Grower’s notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower’s residence or in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto / sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA’s administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.
Opposing the exception of prematurity and motion to stay, the plaintiffs argued *539 that the arbitration provision is unenforceable because it is a contract of adhesion to which they did not consent and that it is unconscionable under the factors set forth in Aguillard v. Auction Management Corp., 2004-2804 (La.6/29/05), 908 So.2d 1. In support of their opposition, affidavits from 25 of the plaintiffs were introduced. Each affidavit averred that the plaintiffs signed the agreements with the ^understanding that they had to do so to purchase the seed at issue, that no one advised them of any terms in the agreement, and that they did not understand or consent to the arbitration provision. The affidavits further stated that the plaintiffs had no choice but to sign the agreement and that to “the best of [their] knowledge, local suppliers only sell corn, cotton, or soybean seed that contains Roundup Ready technology.”
On September 11, 2012, the trial court conducted a hearing on Monsanto’s exception and motion to stay. Following arguments by the parties, the trial court overruled the exception upon finding the arbitration provision unenforceable and “almost unconscionable.” Noting that its decision was based on the Aguillard factors, the trial court found a lack of mutuality based on the limited remedy provided growers in the agreement and the superior bargaining strength of Monsanto relative to the cotton growers. Judgment denying the exception and motion to stay was rendered on October 1, 2012. Monsanto sought supervisory review of the trial court’s ruling, and the matter is now before this court for review as ordered by the supreme court.
DISCUSSION
In two assignments of error, Monsanto asserts that the trial court erred in (1) disregarding Coleman v. Jim Walter Homes, Inc., 2008-1221 (La.3/17/09), 6 So.3d 179, which applies when it is claimed that an arbitration provision is unenforceable due to an error of consent, and (2) misapplying the Aguillard factors to wrongly determine that the arbitration clause is “almost unconscionable.” •

¡¡Applicable Law:

Arbitration is a substitute for litigation whose purpose is to settle the parties’ differences in a fast, inexpensive manner and in a tribunal chosen by them. Tubbs Rice Dryers, Inc. v. Martin, 44,800 (La.App.2d Cir.2/24/10), 33 So.3d 926, recons. denied; 2010-1105 (La.4/29/11), 62 So.3d 105. When a party to a lawsuit claims that'the matter is subject to arbitration, it must be determined whether there is a valid agreement to arbitrate between the parties and whether the dispute falls within the scope of the arbitration agreement. Id. Here, the plaintiffs admit that their claims fall within the scope of the arbitration clause in the agreements signed by them. The issue is whether there is a valid agreement to arbitrate in light of the plaintiffs’ claim that the arbitration clause is adhesionary and unenforceable.
Aguillard, supra, is the seminal case in this state addressing the validity of an arbitration agreement in a standard form contract under a “contract of adhesion” analysis. The facts differ substantially from those in this matter. In Aguillard, supra, a plaintiff attending a real estate auction was required to sign an “Auction Terms & Conditions” document before commencement of the auction. That document contained an arbitration clause. The plaintiff submitted the high bid at the auction and was then required to then sign an “Auction Real Estate Sales Agreement” when he submitted his check for ten percent of the sales price. The plaintiff subsequently filed suit to enforce this agreement after the seller rejected his bid. In *540 response, the defendant sought to enforce the arbitration clause in- |6the “Auction Terms & Conditions” document and to obtain a stay of the lawsuit pending arbitration. The trial court denied the stay and the appellate court affirmed that ruling on the grounds that the arbitration clause was adhesionary and lacked mutuality. After granting writs, the supreme court reversed and stayed the proceedings pending arbitration.
The court began its analysis by recognizing that Louisiana law, like federal law, favors arbitration. As provided in La. R.S. 9:4201, arbitration agreements “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” The court noted that a contract of adhesion is generally a standard contract in printed form, usually in a small print, that is prepared by a party with superior bargaining power and presented to a weaker party for adherence or rejection. The court refused to recognize all standard form contracts as adhesionary, but rather found that a standard form is a “possible indicator of adhesion.” Aguillard, 04-2804, p. 11; 908 So.2d at 10. Summarizing, the court explained:
[A] contract is one of adhesion when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, due to lack of consent or error, which vitiates consent. Accordingly, even if a contract is standard in form and printed in small font, if it does not call into question the non-drafting party’s consent and if it is not demonstrated that the non-drafting party did not consent or his consent is vitiated by error, the contract is not a contract of adhesion.
Aguillard, 04-2804, p. 12, 908 So.2d at 10.
Considering the strong presumption in favor of arbitration under both state and federal law, the supreme court determined that the appellate court erred as a matter of law in finding the arbitration clause adhesionary. In |7making this determination, the supreme court considered the physical characteristics and distinguishing features of the arbitration clause, the mutuality or lack thereof in the arbitration agreement, and the relative bargaining position of the parties. The court noted that the arbitration clause was in “relatively small print” but that neither the print nor font size differed from other clauses in the agreement. The clause was in a two-page contract with each paragraph separated by double spacing and was neither distinguished nor concealed in any way. With regard to mutuality, the court noted that the arbitration clause severely limited both parties’ right to litigate and that the defendants did not “reserve to themselves the right to litigate any issue arising from the contract.” Aguillard, 04-2804, p. 21, 908 So.2d at 16. Finally, the court did not find a sufficient difference in the parties’ bargaining positions so as to justify applying the contract of adhesion principle to the arbitration clause. The real estate auction was not the type of necessary transaction that a party would be compelled to enter; if the plaintiff did not agree with the terms of the contract, including arbitration, he could have attempted to negotiate or refused to participate. The court also recognized the freedom of contract and the principle that “a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him.” Aguillard, 04-2804, p. 22; 908 So.2d at 17.
No contract of adhesion argument or analysis was made in Coleman, supra, which Monsanto argues should have been *541 applied by the trial court |sto resolve this matter. After negotiating a contract for the building of a home, the plaintiff was presented with and signed an arbitration agreement at the closing. When the plaintiff filed a lawsuit for damages incurred during construction, the defendant sought to compel arbitration. The plaintiff argued in opposition that the agreement was unenforceable due to error and that he did not understand what he was giving up by signing the arbitration agreement. Both the trial court and appellate court found in favor of the plaintiff on the grounds that his consent was vitiated by error. However, the supreme court found the arbitration agreement to be valid and enforceable.
Citing La. C.C. art. 1949,[4] the court noted that the building of a home, rather than the procedure for future litigation concerning the contract, was the principal cause of the contract between the parties. Thus, any unilateral error by the plaintiff regarding the arbitration agreement was not sufficient to vitiate his consent. Coleman, supra. The court noted that the arbitration provision was clear, unambiguous, and not hidden in small type. As in Aguillard, supra, the Coleman court noted that a party who signs a written agreement is presumed to know its contents. The court found that the plaintiff signed the agreement that clearly provided for arbitration and that he could not avoid its obligations by claiming he did not read the agreement or understand its contents.

\ (Analysis:

Monsanto asserts that the trial court erred in failing to apply Coleman, supra, which would resolve the matter and require enforcement of the arbitration agreement. We agree that the principles of Coleman, supra, favor enforcement of the arbitration clause at issue. Any alleged error by the plaintiffs as to the arbitration requirement does not concern the cause of the contract, which was the purchase of the cotton seed with Monsanto’s patented technology. While plaintiffs’ affidavits state that they “had no choice but to sign the agreement” as required to purchase the cotton seed, nothing in their affidavits indicates that the procedure for any future litigation was a cause, or even concern, in signing the agreement.
The plaintiffs state in their affidavits that they were not advised of the terms or content of the agreement and that they did not consent to or understand the arbitration provision. However, as emphasized in both Coleman, supra, and Aguillard, supra, a party who signs a written document is presumed to know its contents and cannot escape its obligations by claiming that the other party did not explain it or that he failed to read it or understand it. The plaintiffs, many of whom signed more than one agreement over the years, cannot avoid enforcement of the arbitration provision on basis that they did not understand it or that it was not explained to them.
While Coleman, supra, favors enforcement of the arbitration provision, we do not agree it that it alone mandates reversal of the trial court. There was no argument in Coleman, supra, that the arbitration | inprovision was adhesionary and that case did not involve a contract of adhesion analysis as in Aguillard, supra. As stated in Aguillard, the real issue in a contract of adhesion analysis is one of consent— whether the “party truly consented to all the printed terms.” Aguillard, 04-2804, p. *542 12, 908 So.2d at 10. As explained by the court:
Consent is called into question by the standard form, small print, and most especially the disadvantageous position of the accepting party, which is further emphasized by the potentially unequal bargaining positions of the parties. An unequal bargaining position is evident when the contract unduly burdens one party in comparison to the burdens imposed upon the drafting party and the advantages allowed to that party. Once consent is called into question, the party seeking to invalidate the contract as adhesionary must then demonstrate the non-drafting party either did not consent to the terms in dispute or his consent was vitiated by error, which in turn, renders the contract or provision unenforceable.
Id., footnotes omitted and emphasis added. Thus, even if the plaintiffs cannot show that their consent was vitiated by error, a consent issue remains if the agreement and / or arbitration provision is found to be adhesionary. If so, the issue is whether the plaintiffs truly consented to the arbitration provision. The plaintiffs argue that they did not give meaningful consent because they had no choice but to sign the Technology Agreement. Because the plaintiffs raise a contract of adhesion issue, we will examine the arbitration provision under the factors addressed in Aguillard, supra.
We must first examine the physical features and distinguishing characteristics of the arbitration clause. Monsanto argues that nothing in the format, print or terms of the Technology Agreement calls into question the plaintiffs’ consent. However, the plaintiffs contend that the small print and lack of distinguishing features call into question their consent to arbitration.
|nThe plaintiffs rely heavily on Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc., 2007-146 (La.App.3d Cir.12/12/07), 971 So.2d 1257, which applied Aguillard, supra, to affirm the trial court’s refusal to decertify a class action and its finding that an arbitration provision in BellSouth’s standard consumer contract was adhesion-ary and unenforceable. The court in Sutton Steel, supra, found the arbitration clause “virtually unreadable” and the font size “exceedingly” and “decidedly” unreasonable. Sutton Steel, 07-146, p. 12, 971 So.2d at 1266. Moreover, the arbitration clause was not distinguished from others in the contract. It was not set off by double spacing and the “sheer volume of the words” contained in the contract exacerbated “the difficulty of directing one’s attention to the arbitration clause therein.” Id.
Fairly considering Monsanto’s Technology Agreement, we cannot reach the same conclusion as the Sutton Steel court regarding the characteristics and distinguishing features of the arbitration clause at issue. Our review of the various contracts entered into evidence at the hearing shows that the Technology Agreement is a standard form, small-print variety of contract.[5] However, we cannot say that the print or font size is unreasonably small. The arbitration provision is neither concealed nor distinguished from other provisions in the agreement. It is the second numbered provision of 13 total in the 2010 agreement. It is located at the bottom right of the first page of the four-page *543 agreement and continues on 112the second page. Its heading is in bold-faced capitals, and it is set off by double spacing from the provisions above and below it, as are the other provisions in the agreement. A mere perusal of the bold-faced headings in the agreement apprises the reader of the required “BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER.” The arbitration provision is neither distinguished nor concealed in any way. We must conclude that the arbitration clause is not shown to be adhesionary by its physical features or the similar manner in which it and other clauses are distinguished in the Technology Agreement.
Next, we consider whether the arbitration provision lacks mutuality. The Aguillard opinion did not directly address what is meant by mutuality, but the court considered whether the arbitration provision limited the rights of both parties to litigate, which it did. In Sutton Steel, supra, the arbitration clause did not affect both parties in the same way. The defendant, BellSouth, had the option to pursue remedies other than arbitration, including litigation, and the arbitration clause prohibited consolidated or class action claims that would benefit plaintiffs. The focus of these cases is whether the arbitration provision limits the rights of the parties to seek redress for claims they might have.
Considered in light of the Aguillard and Sutton Steel cases, the arbitration clause lacks mutuality. The requirement for binding arbitration applies broadly to “any claim or action” by the grower “arising out of and/or in connection with this Agreement or the sale or performance” of seed containing Monsanto technology. Only claims that the growers may have | isarising under the patent laws are excluded from binding arbitration. The arbitration clause does not in any way limit the rights of Monsanto or the sellers who may have claims against the growers arising out of or in connection with the agreement, sale, or performance of the cotton seed. We are not persuaded by Monsanto’s argument that mutuality is “unmistakable” because the arbitration clause requires it to jointly pay for arbitration and because it would be bound by the arbitrator’s decision. Notably, the arbitrator is free to apportion all fees to one party in making its decision, thereby rendering the alleged mutuality meaningless. The lack of mutuality, alone, does not mandate a finding that the arbitration provision is adhesion-ary and unenforceable.
Finally, we must consider the relative bargaining positions of the parties. There is nothing in this record to indicate that Monsanto’s standard form Technology Agreement would have been subject to negotiation, even if attempted by the plaintiffs. Referring to Aguillard, supra, Monsanto argues that the difference in bargaining positions is a consideration only when a contract involves such a necessary transaction that the party was compelled to enter it. Monsanto asserts that the record does not show that the plaintiffs were compelled to purchase its seed or other seed containing its technology. On the other hand, the plaintiffs assert in their affidavits that they grew only Roundup Ready cotton and other crops, that these crops are necessary to their livelihoods and income, and that “to the best of [their] knowledge, local suppliers only sell corn, cotton, or soybean seed that contains Roundup Ready technology.”
|, 4 Other than the assertions in their affidavits, the plaintiff did not offer any evidence that only seeds with Roundup Ready technology are sold by their local suppliers. Their assertions do not foreclose the possibility that other seeds could be ordered locally or purchased elsewhere. Additionally, the plaintiffs’ petition appears to belie the assertions in their affida *544 vits. The petition includes the following paragraphs:
4.
The Delta Pine 0949 B2RF cotton seed was defective. It did not retain fruiting positions, nor did it set bolls similar to other cotton varieties planted in the same regions.
[[Image here]]
6.
The crop which resulted from the 0949 B2RF variety was a late maturing and poorly yielding crop that yielded significantly less than other cotton varieties planted by Petitioners using other cotton varieties, oftentimes in adjacent fields planted on the same day, within the same time period and under the same environmental conditions.
While the petition does not indicate, and we cannot say, whether the other varieties referenced in the petition included Monsanto’s patented technology, the plaintiffs’ pleadings suggest that other varieties of cotton seed were available and that they did plant other varieties of cotton seed that performed better than the particular seed at issue. Additionally,' Monsanto introduced evidence showing the availability of other seeds that could have been planted in the plaintiffs’ region.
While plaintiffs may have favored the seeds with Monsanto’s technology, we cannot find that the purchase of the seeds at issue was so necessary that the plaintiffs were compelled to enter the Technology | ¡/¡Agreement. As such, the disparity in the parties’ bargaining positions does not persuade this court to declare the arbitration provision adhesionary and unenforceable.
Although the clause lacks mutuality and there is an apparent disparity in the parties’ bargaining positions, the Aguillard analysis does not mandate a finding that the arbitration clause is adhesionary and unenforceable. The arbitration agreement is written in clear and unambiguous language, and it is not buried in overly small boilerplate language in the agreements. The plaintiffs all signed agreements that included the arbitration clause. Considering the strong public policy under both federal and state law favoring arbitration and the bedrock principle that one who signs a written document is presumed to know its contents and cannot escape its obligations by claiming not to have read or understood the agreement, we are compelled to reverse the trial court’s judgment, grant Monsanto’s exception of prematurity, and stay further proceedings so the claims can be submitted to binding arbitration.
CONCLUSION
For the reasons stated, the trial court’s judgment is reversed. Further proceedings are stayed for submission of the plaintiffs’ claims to binding arbitration. Each party is to bear his own costs.
REVERSED.

. Monsanto Company is the proper defendant-manufacturer. Monsanto Ag Products, LLC, Pharmacia Corporation, and Delta Pine and Land Company (correctly referred to as Delta and Pine Land Company, LLC) are not properly named defendants because they either no longer exist or have no ownership interest in Monsanto.

. According to Monsanto, the seed at issue contained two patented transgenic traits, which are designated by "B2” and "RF” in the name. The first helps protect the plants from cotton bollworm (Bollgard II®), and the latter allows for the application of herbicide without harm to the plant (Roundup Ready Flex®).

. The agreement contains a clause providing that it remains in effect until terminated by the grower or Monsanto, that any new terms will be mailed to the Grower each year and that “[cjontinuing use of Monsanto Technologies after receipt of any new terms constitutes Grower's agreement to be bound by the new terms.” Based on this language, Monsanto asserts that those farmers who planted the seed at issue but did not sign new agreements in 2010 are still bound by the arbitration provision in the agreements signed in prior years.

. La. C.C. art. 1949 reads, "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.”

. Our primary focus is the 2010 Technology Agreement. However, our review applies to all versions admitted into evidence. In reviewing these, we found nothing that would lead to a different conclusion regarding the physical characteristics or distinguishing features of the arbitration clause.