STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-780


DORIS H. USIE

VERSUS

SUNSHINE HOMES, INC., ET AL.



**********

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 82841-G
HONORABLE CURTIS SIGUR, DISTRICT JUDGE

**********

VAN H. KYZAR

JUDGE

**********

Court composed of John E. Conery, D. Kent Savoie, and Van H. Kyzar, Judges.


WRIT GRANTED AND MADE PEREMPTORY.

Jacques P. Soileau
Soileau & Soileau
P.O. Box 344
Breaux Bridge, LA 70517
(337) 332-4561
COUNSEL FOR PLAINTIFF/APPLICANT:
    Doris H. Usie

Gina Bradley Tuttle
Guglielmo, Lopez, Tuttle, Hunter & Jarrell, L.L.P.
P.O. Drawer 1329
Opelousas, LA 70571-1329
(337) 948-8201
COUNSEL FOR DEFENDANT/RESPONDENT:
    Royer Mobile Homes of Opelousas, Inc.

Lamont P. Domingue
Voorhies & Labbé
A Professional Law Corporation
P.O. Box 3527
Lafayette, LA 70502-3527
(337) 232-9700
COUNSEL FOR DEFENDANT/RESPONDENT:
    Sunshine Homes, Inc.

**Kyzar, Judge.**

The plaintiff, Doris H. Usie, filed this application for supervisory writs seeking to have the trial court judgment sustaining the exceptions of prematurity in favor of the defendants, Royer Mobile Homes of Opelousas, Inc. and Sunshine Homes, Inc. set aside. For the following reasons, we grant the writ application and make it peremptory by reversing the trial court judgment and remanding the matter for further proceedings.

## DISCUSSION OF THE RECORD

On March 27, 2007, Usie went to Royer Mobile Homes of Opelousas, Inc. (Royer) to find a new manufactured home (hereinafter sometimes referred to as "home") to take the place of her present home. After choosing a home, she paid a non-refundable deposit of $500.00 by check so Royer would hold the home until she could arrange financing through a third-party lender. On April 10, 2007, Usie executed a purchase agreement with Royer, which identified both the home and the home's purchase price of $39,500.00, and which was signed by both Usie and Alan Amy, Royer's president. However, since Usie's financing arrangements were not yet finalized, Royer agreed that it would continue to hold the home, as well as Usie's $500.00 check.

On April 19, 2007, First Louisiana National Bank, on behalf of Usie, issued a check payable to Royer in the amount of $33,500.00, for the bulk of the home's purchase price. The remaining balance of the purchase price, $6,000.00, was obtained from the trade-in value of Usie's former home. On May 5, 2007, Usie returned to Royer to sign additional documents, one of which was entitled "ACKNOWLEDGMENT AND AGREEMENT (HUD CODE HOME)," which contained the subject arbitration agreement, as follows:

10. ARBITRATION. All parties acknowledge and agree that this agreement and the performance of the transactions contemplated hereby evidence transactions which involve a substantial nexus with interstate commerce. Accordingly, any dispute, controversy or claim of any kind or nature which has arisen or may arise between the parties, their successors, assigns, heirs, representatives, parent companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents, and contractors (including any dispute, controversy or claim relating to the validity of this arbitration clause), whether arising out of past, present or future dealings between the parties, their successors, assigns, heirs, representatives, parent companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents and contractors shall be governed by the Federal Arbitration Act and shall be settled by arbitration before a single arbitrator in accordance with Consumer arbitration rules or the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Such arbitration proceeding shall be held in such location as shall be designated by MANUFACTURER. The arbitrator shall be appointed by the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Such arbitration proceeding shall be held in such location as shall be designated by MANUFACTURER. The arbitrator shall be appointed by the American Arbitration Association from a list of approved arbitrators except that nothing in the agreement shall prevent the parties from mutually agreeing on a single arbitrator of their own choosing .[sic] The cost of arbitration shall be apportioned equally between the parties. Purchaser agrees that prior to any arbitration, manufacturer and its agents, investigators, representative, attorneys etc. will be allowed to inspect the home as often as is reasonably necessary to prepare for the arbitration. Without limiting the generality of foregoing, it is the intention of the parties to resolve by binding arbitration, as provided herein, all past, present, and future disputes, whether in tort, contract or otherwise, concerning or related to (i) the Manufactured Home, its sale, warranty, setup, repair, installation, manufacture, financing, insurance, its representatives, parent companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents, and contractors. The parties understand and agree that the arbitrator shall have all powers provided by law, and may award any legal or equitable relief, including, without limitation, money damages, declaratory relief and injunctive relief. EACH OF THE PARTIES HERETO WAIVES ANY RIGHT TO A JURY TRIAL WITH RESPECT TO ANY CONTROVERSY BETWEEN THE PARTIES, THEIR SUCCESSORS, ASSIGNS, HEIRS, REPRESENTATIVES, PARENT COMPANIES, DIVISIONS, SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS AND CONTRACTORS.

No representative of Sunshine, the manufacturer, was present when the parties executed this document on May 5, 2007, although the signature of Sunshine's service manager, Hugh M. Ballard, was added at a later, unspecified time.

Usie alleged that she began experiencing health problems in October 2013, and that she discovered leaks in her roof in 2014. Upon further investigation, she determined that there was roof damage, rotting wood, and mold in her home. After paying for extensive home repairs, Usie filed the instant suit against Royer, the seller, and Sunshine.

In response to the lawsuit, Royer and Sunshine each filed exceptions of prematurity, arguing that this suit should be dismissed or stayed and that Usie should be required to arbitrate her claims pursuant to the arbitration clause contained in the "Acknowledgment and Agreement" document signed by her. Following a hearing, the trial court sustained the exceptions and stayed the matter pending resolution of the claims in arbitration. Usie has filed the instant writ application seeking reversal of the trial court judgment.

## OPINION

In *Abshire v. Belmont Homes, Inc.*, 04-1200, pp. 7-8 (La.App. 3 Cir. 3/2/05), 896 So.2d 277, 283 (alteration in original), *writ denied*, 05-862 (La. 6/3/05), 903 So.2d 458, this court set forth the proper standard for reviewing a trial court's judgment sustaining an exception of prematurity based on an arbitration provision, as follows:

> The dilatory exception of prematurity is provided for in La.Code Civ.P. art. 926(A)(1), and its function is to raise the issue that a judicial cause of action does not yet exist because of some unmet prerequisite condition. *Blount v. Smith Barney Shearson, Inc.*, 96-0207 (La.App. 4 Cir. 2/12/97), 695 So.2d 1001, *writs denied*, 97-0952, 97-0970 (La.5/30/97), 694 So.2d 246, 247. "It usually is utilized in cases where the law or a contract has provided a procedure for one aggrieved of a decision to seek relief before resorting to judicial action," and "[t]he exceptor has the initial burden of showing

3

that an administrative remedy was available, thus making the judicial action premature." *Id.* at 1003. Thus, the burden is upon [the defendant] to establish that a valid and enforceable arbitration agreement exists. *See id.* In determining whether a party is bound by an arbitration agreement, we apply ordinary contract principles, and a party cannot be required to submit to arbitration a dispute that he has not agreed to submit. *Tresch v. Kilgore*, 03-0035 (La.App. 1 Cir. 11/7/03), 868 So.2d 91. Whether a court should compel arbitration is a question of law. *Dufrene v. HBOS Mfg.*, 03-2201 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206. Therefore, "[a]ppellate review of questions of law is simply to determine whether the trial court was legally correct or incorrect." *Id.* at 1209.

The law applicable to the enforceability of arbitration agreements was recently discussed in *Duhon v. Activelaf, LLC*, 16-818, pp. 5-6 (La. 10/19/16), __ So.3d __, __ (third alteration in original), as follows:

> This case involves the legal questions of whether the court of appeal erred in its "contract of adhesion" analysis of the arbitration clause in the Agreement, and whether the arbitration clause is unenforceable on general contract principles of consent or adhesion. Thus, we review the matter *de novo*. *See Aguillard* [*v. Auction Mgmt. Corp.*, 04-2804, (La. 6/29/05)], 908 So.2d [1,] 3; *Prasad v. Bullard*, 10-291 (La.App. 5 Cir. 10/12/10), 51 So.3d 35, 39; *Horseshoe Entertainment v. Lepinski*, 40,753 (La.App. 2 Cir. 3/8/06), 923 So.2d 929, 934, *writ denied*, 06-792 (La. 6/2/06), 929 So.2d 1259.

> Louisiana and federal law explicitly favor the enforcement of arbitration clauses in written contracts. *Aguillard*, 908 So.2d at 7. Louisiana Binding Arbitration Law ("LBAL") is set forth in La. R.S. 9:4201 *et seq.* and expresses a strong legislative policy favoring arbitration. La. R.S. 9:4201 provides:

>> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

> As this court recognized in *Aguillard*, "[s]uch favorable treatment echos the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*" 908 So.2d at 7. We noted the LBAL is virtually identical to the FAA, and determinations regarding the viability and scope of arbitration clauses are the same under either law, thus federal jurisprudence interpreting the FAA may be considered in construing the LBAL. *Id.*

4

at 18. Further, to the extent that federal and state law differ, the FAA preempts state law as to any written arbitration agreement in a contract involving interstate commerce. *Hodges v. Reasonover*, 12-0043 (La. 7/2/12), 103 So.3d 1069, 1072; *FIA Card Services, N.A. v. Weaver*, 10-1372 (La. 3/15/11), 62 So.3d 709, 712; *Collins v. Prudential Ins. Co. of America*, 99-1423 (La. 1/19/00), 752 So.2d 825, 827.

The FAA makes arbitration agreements "valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contact.*" 9 U.S.C. § 2 (emphasis added). The United States Supreme Court has explained that this provision reflects both a "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011) (citing *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010)). The Supreme Court has instructed that in line with these principles, courts must place arbitration agreements on an equal footing with other contracts. *Concepcion*, 563 U.S. at 339, 131 S.Ct. 1740 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)). Despite this policy favoring enforcement of arbitration agreements, the Supreme Court has also recognized that, under the savings clause in § 2, general state contract principles still apply to assess whether those agreements to arbitrate are valid and enforceable, just as they would to any other contract dispute arising under state law. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686-87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996). Accordingly, ordinary state-law principles that govern the formation of contracts are applied when deciding whether the parties agreed to arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed. 2d 985 (1995). Importantly, the savings clause in § 2 does not permit courts to invalidate an arbitration agreement under a state law applicable only to arbitration provisions. *Concepcion*, 563 U.S. at 339, 131 S.Ct. 1740; *Aguillard*, 908 So. 2d at 8.

In determining whether an arbitration agreement should be enforced, we first recognize that there exists a strong legislative policy in Louisiana favoring arbitration. *Aguillard v. Auction Management Corp.*, 04-2804 (La. 6/29/05), 908 So.2d 1. In support of this policy, Louisiana has enacted the Louisiana Binding Arbitration Law (LBAL), which is found at La.R.S. 9:4201-4217. Specifically, La.R.S. 9:4202 provides:

5

> If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.

The arbitration clause in the present case specifically references the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.* Section Two of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole of any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*

9 U.S.C. § 2 (emphasis added).

Usie raises numerous arguments in support of a reversal of the trial court's ruling, amongst which is that *Coleman v. Jim Walter Homes, Inc.*, 08-1221 (La. 3/17/09), 6 So.3d 179, which the defendants and the trial court relied on, is distinguishable from the facts of the instant case. In that case, the supreme court held that arbitration was required in a claim arising from the sale of a manufactured home. Although the purchaser entered into an agreement to purchase a home manufactured by Jim Walter Homes, Inc., the initial agreement was verbal and both parties understood that written documents would have to be signed at a later date to complete the sale. To that point, the supreme court stated:

> Moreover, we see little support for Mr. Coleman's assertion that the parties reached a complete oral agreement regarding the building of the house before the closing documents were signed. It is obvious that the parties contemplated additional documents, such as a mortgage and promissory note, which the law requires to be reduced to writing in order to be effective. Where the parties intend to reduce their negotiations to writing, they are not bound until the contract is reduced to writing and signed by them. *Breaux Brothers Construction*

*Co. v. Associated Contractors, Inc.*, 226 La. 720, 77 So.3d 17, 20 (1954).

*Coleman*, 6 So.3d at 183.

In contrast, Usie relies on three cases from this court: *Quebedeaux v. Sunshine Homes, Inc.*, 06-349 (La.App. 3 Cir. 10/11/06), 941 So.2d 162, *writs denied*, 06-2698, 06-2772 (La. 1/8/07), 948 So.2d 131, 134; *St. Romain v. Cappaert Manufactured Housing, Inc.*, 05-140 (La.App. 3 Cir. 6/1/05), 903 So.2d 1186; and *Abshire v. Belmont Homes, Inc.*, 04-1200 (La.App. 3 Cir. 3/2/05), 896 So.2d 277, *writ denied*, 05-862 (La. 6/3/05), 903 So.2d 458.

In *Quebedeaux*, this court held invalid an arbitration agreement the seller unilaterally added to a purchase agreement because the buyers would have lost their $15,000.00 down payment and $7,000.00 they spent on site preparation had they refused to sign the agreement. In *St. Romain*, we held that the purchaser of a manufactured home was not required to arbitrate her redhibition claims, when the evidence showed that the purchaser were unaware of and never signed an arbitration agreement as part of her purchase of the manufactured home. In *Abshire*, we further held that an arbitration agreement was invalid when it was not shown to be part of the consideration for the purchase of the home and that the manufacturer, who was not a party to the purchase agreement, could not unilaterally "assign additional consideration for the perfection of the sale." *Abshire*, 896 So.2d at 285.

Royer and Sunshine contend that the ruling in *Coleman* places into question the continued viability of the holdings in *Quebedeaux*, *St. Romain*, and *Abshire*. In *Fin & Feather Chalets, LLC v. Southern Energy Homes, Inc.*, 13-6082, 2014 WL 4354459 (E.D. La. Sept. 2, 2014), which was quoted by the trial court, the federal court declined to address the viability of *Quebedeaux*, *St. Romain*, and *Abshire*

7

because *Coleman* was on point with the facts at issue in that matter. However, the court in *Fin & Feather* recognized that state law is applicable to the initial determination of whether an arbitration agreement is valid.

In *Posadas v. The Pool Depot, Inc.*, 02-1819, pp. 3-4 (La.App. 1 Cir. 6/27/03), 858 So.2d 611, 613-14, *writ denied*, 03-2125 (La.11/7/03), 857 So.2d 502 (citations omitted) (emphasis added), the court stated as follows:

> Although a state law cannot be used to invalidate an arbitration agreement [governed by the FAA] when the law applies only to arbitration agreements, a state law may be applied to invalidate an arbitration agreement *if that law governs issues concerning the validity, revocability, and enforceability of contracts generally.* Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening the FAA.

The written purchase agreement in this instance was executed by Usie and Royer on April 10, 2007. Usie alleges that the sale was complete as of that date; while the Royer and Sunshine contend that the sale was not completed until May 5, 2007, when the document containing the arbitration clause was executed. Pursuant to La.Civ.Code art. 2456, "[o]wnership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid." In this instance, the purchase agreement set forth the specific manufactured home that Usie was purchasing and the price to be paid for the home being purchased. While she had not yet obtained financing for the home, La.Civ.Code art. 2456 specifically states that payment of the purchase price is not necessary for ownership to transfer.

Additionally, there is no provision in the purchase agreement making the procurement of financing a condition precedent to the sale. Although the purchase agreement states, "Title to the within described unit passes as of the date of signing of the retail installment or security agreement by the purchasers even though physical

delivery may not be made until a later date", financing was not being provided by either the seller or the manufacturer, and those financing documents between the buyer and the third-party lender, if any, were not necessary to the transaction at hand. Further, while the parties anticipated that Usie would trade her used manufactured home as partial payment for the new home, the actual trade in was not required prior to the transfer of ownership of the new home.

Although the trial court concluded that *Coleman* was controlling, we find that it is distinguishable from the facts at issue here. In *Coleman*, the parties, who initially entered into a verbal agreement, understood that written documents were necessary to perfect the sale, including the financing documents, which were facilitated by the seller. In the instant case, the parties agree that a written purchase agreement was executed on April 10, 2007, which was clear as to the object of the sale and the price. There were no conditions precedent set forth in the agreement pertaining to this transaction. Indeed, the language in the document itself refers to the purchase as a completed transaction. Moreover, there was neither verbal discussion nor written provisions concerning the necessity to arbitrate at the time the purchase agreement was executed.[1] The first mention of the arbitration agreement was contained in the Acknowledgment and Agreement executed by the parties on May 5, 2007. However, none of the documents[2] executed on May 5, 2007, were necessary for a completed sale because the ownership of the home was transferred on April 10, 2007, at which time either

---

[1] Although the Purchase Agreement indicated, in two different locations, that the agreement was subject to the terms and conditions stated on both sides of the agreement, only the front side of the document was introduced into evidence at the hearing on the exception of prematurity.

[2] In addition to the Acknowledgment and Agreement, Usie executed a Placement and Service Agreement, an Important Health Notice, a document concerning skirting kits, a Consumer Information document from Sunshine, and the Bill of Sale.

party could have demanded specific performance of the contract. Had Usie sought to rescind the sale after that date, Royer could legally have denied her request.

Further, while Royer and Sunshine pontificate that *Coleman* overturned the holdings of this court in *Quebedeaux, St. Romain,* and *Abshire,* we find that each of these cases is factually distinguishable from *Coleman.* To hold to the contrary would be to give every seller the absolute power to demand, even after the fact, that purchasers sign arbitration agreements or risk losing their money or property. Thus, we conclude that the trial court erred in sustaining the peremptory exceptions of prematurity requiring arbitration in this case based upon the holdings in *Coleman* and *Fin & Feathers.*

We turn now to determine the validity of the arbitration clause in the agreement dated May 5, 2007, and its effect, if any, when considered separately from the previously executed sale. It is clear that the arbitration agreement, if valid under the contract laws of this state, could, by its own terms, bind the parties to arbitration for any claims related to the prior sale. It is not disputed that the agreement containing the arbitration language was executed by Usie and Royer, through its president, Amy, and that Sunshine was neither a party to the sale nor represented in person when this document was executed.

We find that the facts presented herein are indistinguishable from those in *Rodriguez v. Ed's Mobile Homes of Bossier City, Louisiana,* 04-1082 (La.App. 3 Cir. 12/8/04), 889 So.2d 461, *writ denied,* 05-83 (La. 3/18/05), 896 So.2d 1010. There, an arbitration agreement was invalidated for lack of consent by the purchasers, who executed a purchase agreement for a mobile home prior to the mention of or signing of the arbitration agreement. However, despite the fact that they were already legally and financially liable for the mobile home, the *Rodriguez* plaintiffs genuinely believed, even if they were never explicitly told so, that the

10

execution of the arbitration agreement was a prerequisite to their gaining possession of the home. We held that this "understanding was error under the law." *Id.* at 464. We, likewise, hold that Usie's understanding in this case was also error under the law. Accordingly, we find that Usie's consent to the arbitration agreement is invalidated based on this legal error.

Further, as we noted in *Rodriguez*, the manufacturer "knew or should have known that the arbitration agreement could not be part of the consideration of the original contract, especially as no mention of arbitration was made until after signing the original contract. A party cannot, unilaterally, assign additional consideration for the perfection of a sale." *Id.* Even if the purchase agreement and arbitration agreement had been contemporaneously, evidence is still required that the arbitration agreement was part of the consideration of the original purchase agreement for it to be valid. *Abshire*, 896 So.2d 277. In this instance, no such evidence is present. Thus, Sunshine, who was not a party to the purchase agreement, is precluded from unilaterally assigning additional consideration for the perfection of the sale in the form of the arbitration agreement. Had Royer required Usie to agree to the arbitration agreement as to both it and Sunshine as additional consideration for the purchase, it was obligated to include that as a condition of the sale and make it a part of the purchase agreement. It failed to do so. Accordingly, the arbitration agreement fails on its own merits as to both Royer and Sunshine for failure of consideration.

## DISPOSITION

For the reasons assigned herein, we grant and make peremptory the application for supervisory writs filed by Doris H. Usie, and in doing so, reverse the judgment of the trial court sustaining the exceptions of prematurity in favor of Royer Mobile Homes of Opelousas, Inc. and Sunshine Homes, Inc. We assess all

11

costs of this writ application to Royer Mobile Homes of Opelousas, Inc. and Sunshine Homes, Inc.

**WRIT GRANTED AND MADE PEREMPTORY.**