SUSAN M. CHEHARDY, Chief Judge.
|2This is a suit on an open account, in which a paint supplier sued a paint buyer and its purported agent for the balance owed on its account. After a bench trial, the trial judge found in favor of the paint buyer and dismissed the paint supplier’s action. For the following reasons, the trial court’s judgment is affirmed.

Facts and Procedural History

Crescent Coatings & Services (hereinafter “Crescent Coatings”) is hired by oilfield companies to apply special paints and coatings to specific pieces of machinery. If required under the contract, Crescent Coatings supplies the paint/coating for the job. To facilitate its purchase of large quantities of paint, Crescent Coating’s accountant, Billy Ray Orgeron, applied for a line of credit with a local paint supplier, Quality Paint, Hardware, & Marine Supply, Inc. (hereinafter “Quality Paint”) on December 21, 2007.[1]
In 2010, Crescent Coatings ordered paint from Quality Paint on February 18; March 1; March 4; and March 16, 2010. The parties agree that Quality Paint delivered thru its agent, Saia Trucking, and Crescent Coatings received and paid |sfor each of those orders, except the order placed March 16, 2010. Thus, only one order is at issue.
On July 14, 2011, Quality Paint sued Crescent Coatings; Billy Ray Orgeron; Max Welders, L.L.C.; and Max Welders Holding Company, L.L.C. (hereinafter collectively “Max Welders”) for the balance of $11,365.40 for marine paint ordered on March 16, 2010. Crescent Coatings and its employee, Billy Ray Orgeron, answered the petition, denied responsibility for payment on the basis that Crescent Coatings did not receive, and Quality Paint failed to deliver, the paint in question.
A bench trial commenced on October 8, 2012. At trial, A1 Hebert, Crescent Coatings’ Vice President of Operations, testified that he was informed, on March 17, 2010, by the paint manufacturer that Crescent Coatings’ March 16, 2010 order from Quality Paint had been cancelled by the manufacturer. The parties presented evidence that Crescent Coatings placed an order for a larger quantity of the same paint directly with the paint manufacturer *783 on March 22, 2010, which was successfully delivered to Crescent Coatings on March 23, 2010.
The trial testimony further revealed that Quality Paint shipped the product from the paint manufacturer directly to Crescent Coatings’ paint shed on Blackwater Court in Gibson, Louisiana. Quality Paint, as part of the delivery instructions given to the shipper, identified the sign for Max Welders, another business on Blackwater Court, as a landmark to find Crescent Coatings’ location.[2]
John Pitre, a veteran driver for Saia Trucking, testified that, in his career, he made one delivery to Blackwater Court, which was on March 17, 2010. That day, Pitre stopped at Max Welders, where Elliott Naquin signed for the order and used a forklift to unload the order from Quality Paint. Before Pitre departed, Naquin |4realized his mistake, reloaded the order onto Pitre’s truck, and directed Pitre toward Crescent Coatings’ location at 199 Blackwater Court.
Pitre testified that he drove into the “little yard” with a warehouse next door to Max Welders, waited for a man to repair a forklift, then allowed the man to unload the order. Pitre did not obtain a signature from the man that unloaded the order because his computerized order system did not allow for a second signature.
The parties introduced the delivery ticket from Saia Trucking for the March 16, 2010 order, which was signed by Elliott Naquin, an employee of Max Welders, not Crescent Coatings. At trial, Mr. Naquin agreed that the signature was his but testified that he had no memory of this delivery and that he “never unloaded any delivery for Crescent Coatings at Max Welders.” Further, it is undisputed that no employee from Crescent Coatings signed the delivery ticket for the March 16, 2010 order.
Moreover, Crescent Coatings’ payroll records for its Gibson location for March 17, 2010 were introduced, which reflected that no employees were onsite at Gibson after 7:30 a.m. Finally, evidence, including photographs and satellite images, were introduced that revealed that Crescent Coatings’ Gibson location was not a warehouse in a “little yard” next door to Max Welders, but a site that included a four-sided structure without a roof and several locked shipping containers about 1000 feet down a gravel road that was perpendicular to Blackwater Court.
At the close of Quality Paint’s case-in-chief, Max Welders moved for an involuntary dismissal, Quality Paint agreed, and the trial judge granted Max Welders’ motion. The record before this Court does not contain a 'written judgment memorializing this ruling.
|fiAt the close of trial, the trial judge took the matter under advisement. On October 15, 2012, the trial judge issued a written judgment in favor of Crescent Coatings and Billy Ray Orgeron, dismissing Quality Paint’s claims. In her Reasons for Judgment, the trial judge found credibility in Quality Paint’s testimony that the paint was ordered and the order was not cancelled. The trial judge further believed Crescent Coatings’ testimony that it did not receive the paint. The trial judge found the least credible testimony was presented by Saia’s delivery driver, John Pi-tre, who contradicted testimony from several more credible witnesses, including his statement that Crescent Coatings’ location was a warehouse in a “little yard,” next door to Max Welders. The trial judge concluded “that the paint was more likely lost or mishandled in transit than received *784 and hidden by Crescent.” Finally, the trial court, relying on La. C.C. arts. 2482 and 2616, found that Quality Paint failed to bear the burden of proving delivery and, thus, should bear the loss in this matter. On December 3, 2012, Quality Paint devol-utively appealed the judgment rendered on October 15, 2012.
On appeal, Quality Paint argues three assignments of error: first, the trial court erred in failing to find that Max Welders was the putative agent of Crescent Coatings and delivery of the shipment of paint to Max Welders was delivery to Crescent Coatings; second, the trial court erred in failing to find that based upon equity, usage and the conduct of the parties developed in their contractual dealings that the delivery of the paint to Max Welders was delivery in accordance with the parties’ contract; and third, the factual findings and conclusions of the trial court were not reasonable and clearly wrong in concluding that the delivery driver’s testimony concerning the events that occurred when he delivered the paint was contradicted by the testimony of the employee of Max Welders, who signed the delivery receipt for the paint, resulting in manifest error.
| (Jurisdictional Matters
Before addressing the merits of Quality Paint’s appeal of issues regarding Max Welders, we must determine which issues are properly before this Court. First, the record before this Court does not contain a written judgment dismissing Max Welders. When a trial judge has failed to produce a written and signed final judgment, no appeal from that judgment may be taken. La. C.C.P. art. 1911.[3] A minute entry and an oral judgment that has not been reduced to writing and signed by the trial judge are insufficient to divest the trial court of jurisdiction and grant jurisdiction to the appellate court. State v. Beaudoin, 06-88 (La.App. 5 Cir. 6/29/06), 939 So.2d 428 (citing La. C.C.P. art. 2088). Thus, without a written judgment signed by the trial judge, no appeal from that judgment may be taken. See: La. C.C.P. art. 1911; C.C.P. art. 1918; Lenard v. Goodwin, 554 So.2d 294 (La.App. 5th Cir.1989).
Further, under the express provisions of La. C.C.P. art. 2088, the trial court is not considered divested of jurisdiction to consider any issue that is “not reviewable under the appeal.” This language “not reviewable under the appeal” has generally been interpreted to give the trial court continuing jurisdiction over all issues that are unaffected by the appeal, even if the issue is not specifically listed in La. C.C.P. art. 2088. State Through Department of Social Services on Behalf of Harden v. Southern Baptist Hospital, 94-2228 (La.App. 4 Cir. 10/12/95), 663 So.2d 443, writ denied, 95-2751 (La.1/26/96), 666 So.2d 676. Here, the trial court retains jurisdiction over issues regarding Max Welders.
Second, even if there were a final judgment on that matter, the dismissal of Max Welders may not be appealable. La. C.C.P. art. 2085 provides, in pertinent 17part, that, “An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him.” Martin v. Holzer Sheet Metal Works, Inc., 376 So.2d 500 (La.1979). Acquiescence should be decreed only when the party’s intention to acquiesce and abandon his right of ap *785 peal is clearly demonstrated by direct or circumstantial evidence that the party now appealing intended to acquiesce. Succession of Marcel, 387 So.2d 1363 (La.App. 1 Cir.1980).
Here, a review of the trial transcript reveals:
Your Honor, with respect to the motion made by Max Welding, I think the evidence is clear, as indicated, that the driver did take the paint order back and deliver it to Crescent Coating, and that ... Max Welding did not take the paint — does not have the paint, and I have no objections as in [sic] dismissal at this point.
Third, the written judgment of October 15, 2012, which is the subject of this appeal, makes no mention of Max Welders, except to identify its counsel. Thus, only issues that were raised at trial between Quality Paint and Crescent Coatings are before this court for review, which brings us to the merits of the issues raised by Quality Paint on appeal.

Law and Argument

In its first assignment of error, Quality Paint argues that the trial judge should have applied “the doctrine of apparent authority and agency by estoppel” to find that Crescent Coatings held out Max Welders was Crescent Coatings’ putative agent for receipt of goods. We have reviewed the record and find, however, that the issue of “putative mandatary” was not raised by Quality Paint in the trial court in its pleadings, in testimony, or in argument. Generally, issues not raised in the trial court will not be given consideration for the first time on appeal. See, U.R.C.A. Rule 1-3; Warner v. Alex Enterprises, Inc., 08-0929 (La.App. 4 Cir. 1/28/09), 4 So.3d 922, 925. Therefore, we will not consider this assignment of error.
Next, Quality Paint argues that the trial court erred in failing to find that, “based upon equity, usage, and the conduct of the parties ... that the delivery of the paint to Max Welders was delivery in accordance with the party’s [sic] contract.” Quality Paint argues that it designated Max Welders as the destination to deliver the paint order and the shipment was delivered to Max Welders as noted on the delivery receipt; therefore, pursuant to La. C.C. 2616, the risk of loss should have transferred to Crescent Coatings when the order was delivered as instructed.
La. C.C. art. 2616 reads, in pertinent part:
When the contract requires the seller to ship the things through a carrier, but does not require him to deliver the things at any particular destination, the risk of loss is transferred to the buyer upon delivery of the things to the carrier, regardless of the form of the bill of lading.
When the contract of sale requires the seller to deliver the things at a particular destination, the risk of loss is transferred to the buyer when the things, while in possession of the carrier, are duly tendered to the buyer at the place of destination.
Contrary to Quality Paint’s assertion, the testimony at trial reflected that Crescent Coatings required delivery of every paint order to its Gibson location at 199 Blackwater Court, not Max Welders’ location at 188 Blackwater Court. Testimony revealed that, contrary to this argument, Quality Paint’s President told the shipping company to look for Max Welders’ sign as a landmark to help direct its drivers to Crescent Coatings but did not instruct the shipper to offload the order at Max Welders. In fact, the testimony from Max Welders’ employees, Crescent Coatings’ employees, and even Quality Paint’s *786 President was unequivocal that Crescent Coatings expected delivery of shipments to its isolated location at 199 Blackwater Court. The trial court did not err in finding that Quality Paint was required to deliver the goods to Crescent Coatings’ Gibson location and, because |sthe goods were not tendered at the place of destination, the risk of loss remained with Quality Paint. This assignment of error lacks merit.
In its final assignment of error, Quality Paint argues that “the factual findings ... of the trial court ... that the delivery driver’s testimony concerning the events that occurred when he delivered the paint was contradicted by the testimony of the employee of Max Welders, LLC[,] who signed the delivery receipt for the paint, [were not reasonable and clearly wrong,] resulting in manifest error.”
It is well-settled that a reviewing court may not disturb the factual findings of the trier of fact in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1979). In Arceneaux, the Louisiana Supreme Court set forth a two-part test for the appellate review of facts: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court, and (2) the appellate court must further determine that the record establishes the finding is not clearly wrong or manifestly erroneous. Arceneaux, 365 So.2d at 1333; see also Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993); Sistler, 558 So.2d at 1112.
In this case, the trial judge’s factual finding that Quality Paint failed to prove delivery of the order to Crescent Coatings was based on her credibility determinations. In Rosell, supra, the supreme court expounded on the concept of |in“clearly wrong” or “manifestly erroneous” with regard to credibility determinations:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d at 844-45 (citations omitted).
In this case, the trial judge based her finding that the delivery was not completed on inconsistencies in the delivery driver’s testimony. Upon our review of the record, and keeping in mind the correct standard of review, we find no manifest error in the trial court’s factual determination. This assignment of error lacks merit.

*787
Conclusion

Based on the foregoing, we find no error in the trial court’s judgment in favor of Crescent Coatings and Billy Ray Orgeron in this case. For that reason, the judgment is affirmed. Costs of this appeal are assessed entirely to Quality Paint.

AFFIRMED

. The record reflects a document entitled . "Personal Guarantee” signed by Billy Orger-on. However, the document does not reflect whose debts Mr. Orgeron guaranteed to pay.

. Max Welders has a guard-gated entrance, which requires all drivers to stop.

. La. C.C.P. art. 1911 reads, in pertinent part: "Except as otherwise provided by law, every final judgment shall be signed by the judge. For the purpose of an appeal as provided in Article 2083, no appeal may be taken from a final judgment until the requirement of this Article has been fulfilled."