BROWN, Chief Judge.
' ^Plaintiffs filed this lawsuit initially to put defendant in default for the failure to reasonably develop certain mineral leases and then amended the suit seeking a judicial declaration of termination of the leases by operation of the law pursuant to La. C.C. art. 2679. Both parties filed cross motions for summary judgment on the question of whether, article 2679, which provides that the term of a lease may not exceed 99 years, was applicable to these mineral leases. The trial court concluded that La. C.C. art. 2679 was inapplicable to these leases and granted defendant’s MSJ and denied plaintiffs’ MSJ. Plaintiffs have appealed.

Facts and Procedural Background

At issue are three mineral leases executed in 1907 by W.P. Stiles, plaintiffs’ prede *262 cessor in title, in favor of M.L.. Benedum, J.S. Glenn and L.L. Thomas (the “Stiles Leases”). The Stiles Leases covered approximately 3214 acres in northwestern Gaddo Parish (the “Property”). Each lease was granted: .
for a term of ten years from date hereof and as much longer thereafter as gas or oil is found or produced in paying quantities ... (Emphasis added).
On January 15, 1908, the Stiles Leases were assigned to J.C. Trees Oil Company, Inc. (“Trees Oil”), an operating arm of Joseph C. Trees and Michael L. Benedum, an. oil and gas exploration partnership of the early 20th century.
In 1920, Trees Oil sold the mineral rights under the Stiles Leases along with other lease acreage to Standard Oil Company (“Standard”), the predecessor of defendant, Exxon Mobil Corporation (“Exxon”). Since the ^acquisition of the Stiles Leases in 1920, Standard, and subsequently Exxon, has continued to operate the Stiles Leases.
There are several hundred active shallow wells on the leases. In 2007, this matter was originally brought as an action for failure to reasonably develop the leases at a depth below 6,000 feet. In particular, plaintiffs, asked for cancellation and release of a portion of the leases below 6,000 feet." Plaintiffs are Regions. Bank, L. Frank Moore and Don Jones, Co-Trustees of the Trust Created under the Last Will and Testament of Annie Lowe Stiles; and Regions Bank, Trustee for the Trust Created under the Last Will and Testament of Edward P. Stiles (hereinafter “plaintiffs” or “Stiles' Trusts”). Initially defendants were Questar Exploration. & Production Corp., Centerpoint Energy Gas Transmission Co., and Exxon Mobil Corp. Plaintiffs dismissed their claims against Questar and Centerpoint, leaving Exxon as the sole defendant.
In 2013, plaintiffs filed an amended and restated petition in which they asserted as “Count I” that the leases had terminated by operation of La. C.C. art. 2679, which states that a lease may not exceed 99 years. Plaintiffs reasserted as “Count II” the alternative claim for failure to reason-ábly develop the leases below 6,000 feet.
Plaintiffs moved for summary judgment on Count I. Exxon filed a cross-motion for summary judgment on the same issue. Exxon also filed an exception of nonjoin-der, arguing that unspecified assignees and sublessees of interests in the Stiles Leases should be joined in the action. Plaintiffs opposed- the exception on grounds that Exxon had not notified them in | ¡^writing of its assignments and subleases as required by La. R.S. 31:132, which precluded the necessity of demand on the sublessees or assignees.
At the December 1, 2014, hearing, without relying on any extraneous evidence, the court denied the Stiles Trusts’ motion for summary judgment and granted Exxon’s cross-motion, finding La. C.C. art. 2679 to be inapplicable to mineral leases. A ruling, on Exxon’s exception of non-join-der was deferred/passed by agreement. Judgment'in accordance with the court’s ruling was signed on December 17, 2014. Plaintiffs thereafter filed a writ with this Court based on the non-finality of the judgment, which disposed of the 99-year lease termination issue but not plaintiffs’ failure to develop claim.
This Court denied supervisory writs, stating that the 99-year lease termination ruling was a “final judgment” subject to appeal. Plaintiffs thereafter timely moved to commence this devolutive appeal. In response, Exxon filed a “Pre-Lodging Motion to Dismiss Plaintiffs’ Appeal.” This Court issued an order finding the case to be non-appealable as it was not certified *263 under La. C.C.P. art. 1915(B), but afforded the Stiles Trusts the opportunity to seek such certification. Following receipt of the trial court’s certification order, this Court ruled that the procedural defect was cured and allowed the appeal to proceed.

Discussion

Exxon’s Motion to Dismiss the Appeal

In its appellate brief, Exxon disputes the validity of plaintiffs’ appeal, asserting that the trial court’s certification of the judgment came after the |4trial court had been divested of jurisdiction to rule on any issues of certification related to. the judgment. Further, if this Court finds that the trial court had jurisdiction to .certify the judgment, Exxon maintains that this certification was not warranted and that there were no “expressed” reasons given by the trial court. According to Exxon, there is no justification for the certification because a ruling' from' this Court as to the issue on appeal will not dispose of other matters pending in the trial court and will affect the rights 'of parties not joined in the present suit.
C.C.P. art. 1915(B)(1) provides that:
When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more- but less than, all of the claims, •demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express, determination that there is no just reason for delay.
Exxon questions the timing of the certification orders claiming that -the appeal divested the trial court of jurisdiction to issue the certification, citing La. C.C.P. art. 2088(A). Neither the courts nor the legislature has put. a. time limit on when certification can- be done. In fact, this Court afforded the trial court in this, case the opportunity to determine whether the partial summary judgment should be certified.for appeal.
In Quality Paint Hardware and Marine Supply, Inc. v. Crescent Coating and Services, Inc., 13-129, (La.App. 5th Cir.08/27/13), 123 So.3d 780, 784, the Fifth Circuit held:
First, the record before this Court does not contain a written judgment dismissing Max Welders. When a trial judge has - failed >, to- produce a written and ■signed final judgment, no | ¡¡appeal from that- judgment may be taken. La. C.C.P. art. 1911. A minute entry and an oral judgment that has not been reduced to writing and signed by the trial judge are. insufficient to divest the trial court of jurisdiction and grant jurisdiction to the appellate court. State v. Beaudoin, 06-88 (La.App. 5th Cir.06/29/06), 939 So.2d 428 (citing La. C.C.P. art. 2088). Thus, without a written judgment signed by the trial judge, no appeal from that judgment may be taken. - •
Likewise, in the case herein, this court found that the initial appeal was not reviewable because there was no certification pursuant to C.C.P. art. 1915(B). If an appeal is filed before the certification of the judgment, as in the case sub judice, the subsequent certification of the judgment cures any defect in the premature appeal. See Overmier v. Traylor, 475 So.2d 1094 (La.1985); Johnson v. Pueblo Viejo, Inc., 47,586 (La.App.2d Cir.04/10/13), 134 So.3d 593.
Exxon argues that La; C.C.P. art. 1915(B) requires that the trial judge provide expressed reasons for the certification. In R.J. Messinger, Inc. v. Rosen *264 blum, 04-1664 (La.03/02/05), 894 So.2d 1113, the supreme court held:
[T]o assist the appellate court in its review of designated final judgments, the trial court should give explicit reasons, either oral or written, for its determination that there is no just reason for delay. However, if the trial court fails to do so ... the appellate court cannot summarily dismiss the appeal.,.. [T]he proper standard of review for an order designating a judgment as final for appeal purposes when accompanied by explicit reasons is whether the trial court abused its discretion. If no reasons are given but some justification is apparent from the record, the appellate court should make a de novo determination of whether the certification was proper ... [I]f after examination of the record the propriety of the certification is not apparent, the court of appeal may request a per curiam from the trial judge ... [or] issue a rule to show cause to the parties requiring them to show why the appeal should not be dismissed for failure to comply with La. C.C.P. art. 1915, when the propriety of the certification is not apparent and the trial court has failed to give reasons for its certification.
|RIn the present case, the reasons for certification are apparent. If not certified, the remaining issues would be decided one by one, but the question now on appeal would always be an obstacle to a resolution of the case. From our de novo review, we find that the certification was proper. As to the nonjoinder argument, as previously stated, this question was passed in the trial court by agreement.

Duration of the Leases

Plaintiffs rely on the applicability of La. C.C. art. 2679 and La. R.S. 31:2. The leases at issue were obtained in 1907. La. C.C. Art. 2679, which was enacted in 2005, provides in part:
The duration of a term may not exceed ninety-nine years. If the lease provides for a longer term or contains an option to extend the term to more than ninety-nine years, the term shall be reduced to ninety-nine years.
The Mineral Code, which was enacted in 1974, at La. R.S. 31.2 states that:
The provisions of this Code are supplementary to those of the Louisiana Civil Code and are applicable specifically to the subject matter of mineral law. In the event of conflict between the provisions of this Code and those of the Civil Code or other laws the provisions of this Code shall prevail. If this Code does not expressly or impliedly provide for a particular situation, the Civil Code or other laws are applicable.
Plaintiffs argue that La. C.C. art. 2679 is interpretive of Louisiana law, which has always prohibited perpetual leases as an infringement on ownership, and civilian tradition, which has long viewed 99 years as the time at which a lease becomes perpetual.
Exxon’s position relies on the “thereafter” or habendum clause in the 1907 leases, and which provides that the duration of a mineral lease is|7directly connected to oil and gas production and that C.C art. 2679 has no application. Particularly as stated in the Mineral Code at LSA-R.S. 31:115(A):
The interest of a mineral lessee is not subject to the prescription of nonuse, but the lease must have a term. Except as provided in this Article, a lease shall not be continued for a period of more than ten years without drilling or mining operations or production. Except as provided in this Article, if a mineral lease permits continuance for a period greater than ten years without drilling *265 or mining operations or production, the period is reduced to ten years.
Oil and gas production in Louisiana commenced on a significant scale just over a century ago. Most mineral leases expire as production ends before they reach the 99-year mark. The Stiles Leases may be the first time that this issue has arisen.
Under R.S. 31:2, the application of La. C.C. art. 2679 to mineral leases depends on whether or not that article conflicts with a provision of the Mineral Code. Indeed, perpetual leases are disfavored by the law and are void from their inception. La. C.C. art. 2679; La. R.S. 31:115(4). That said, we must first determine whether the leases herein are in fact perpetual and if so, whether the Mineral Code conflicts with La. C.C. art. 2679.
The “thereafter” or habendum clause is two-tiered. The first tier, or primary term, is of definite duration. The second tier is of indefinite duration and operates to extend the Lessee’s rights under the lease so long as the conditions of the secondary term are met. Applying these principles to the instant case, the primary term of the Lease is ten years and the secondary term is “as much longer thereafter as gas or oil is found or produced in paying quantities.”
|sIn this case, the secondary term of the habendum clause does not allow an extension merely because the land is capable of production. Instead, case law has interpreted the phrase as referring to whether a well is producing. This interpretation presupposes that a well was drilled and tested or began producing during the primary term of the lease, and continued producing into the secondary term. The secondary term would then continue until such time as the well was no longer capable of producing in paying quantities. See Webb v. Hardage Corp., 471 So.2d 889, (La.App. 2d Cir.1985).
The provision of the Mineral Code that addresses the duration of a mineral lease term is La. R.S. 31:115(A).
The language of the first part of Section 115(A) specifies that the lease “must have a term,” and the second part of La. R.S. 31:115(A) provides that the term shall not be extended without drilling or mining operations or production. The primary term of the lease is not the issue herein; rather, the question is the ultimate or secondary term of the lease.
Plaintiffs’ assertions that the “secondary term” of a mineral lease is limited to 99 years are directly contrary to the universal concept of maintaining a mineral lease for as long as minerals are produced in paying quantities. The Stiles Leases provide that the lessees are granted a lease on the Property “[t]o have and to hold the same for a term of ten years from date hereof and as much longer thereafter as gas or oil is found or produced in paying quantities ...” This is a version of the “thereafter” habendum clause which is widely accepted in the oil and gas industry. The haben-dum |flclause, which exists in the Stiles Leases, became widely used in the 1890s and has continued to be prevalent throughout the industry.
The 99-year limit seen in the law of general leases is not rationally applicable to mineral leases as made abundantly clear by the shift away from using “fixed-term” leases to the more modern habendum clause. The shift away from using the “fixed-term” in mineral leases occurred because the “fixed-term” did not account for the realities of the oil and gas industry.
The general lease provision, article 2679 of the Civil Code enacted in 2005, and which provides that a maximum lease term is 99 years, cannot apply to mineral leases because mineral leases have their own *266 maximum term as provided by the Mineral Code.
La. R.S. 31:115 provides for a maximum secondary term based upon continued drilling or mining operations or production. The Mineral Code contemplates that a mineral .lease will terminate at the expiration of the agreed term or upon the occurrence of an express resolutory condition. The Civil Code provides for- a maximum term based upon a stated number of years. Thus, the general lease provision providing that’ a maximum lease term is 99 years clearly conflicts with the maximum term established for mineral leases as provided by the Mineral Code. As noted above, La. R.S. 31:2 declares that “[i]n the event of & conflict between the provisions' of the [Mineral] Code and those of the Civil Code or other laws the provisions of this [Mineral] Code’shall prevail.”
The Stiles Leases are not perpetual leases but are mineral leases governed by their terms and the Louisiana Mineral Code.
ImThe habendum clause- balances the interests of the lessor and lessee and above all ensures that the leased property is used for the development of the land through the production of oil and gas, and, if not, the lease terminates. Plaintiffs’ argument runs contrary to this well-established practice and contrary to the habendum clause contained in countless leases throughout Louisiana, and specifically in the Stiles Leases.
For all of these reasons, the trial court properly determined that the leases were not no-term and perpetual in nature, and therefore not void ab initio as against public policy. The leases provided for a primary' term of ten years within' which to commence drilling. Only then would a secondary term commence, and continue only so long as there is an established oil or gas well that is actually producing or capable of producing in paying quantities.
We affirm the trial court’s judgment and remand for further proceedings. Costs are assessed against plaintiffs.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, DREW, MOORE and BLEICH, JJ.
Rehearing denied.