CALLOWAY, J. Ad Hoc.
|, Kenneth Griffin, Pigs Flying, LLC, and Simply Cremations, LLC, appeal a judgment rendered in favor of Allen Best, Lynda Best, Donald Higdon, and Taffy Griffin, in the amount of $99,589.45. Finding no error, we affirm the trial court’s judgment.
FACTS AND PROCEDURAL HISTORY
Kenneth Griffin, Taffy Griffin,[1] Alen Best, Lynda Best, Donald Higdon, and Michael Clark formed a company known as Clark and Griffin LLC. Michael Clark left the company ■ and Donald Higdon purchased his shares. Jane Rice had a 5% share in the company. The company was renamed the Louisiana Trinity Group (“LTG”), and from this company they started a funeral home business operating under the name of Griffin Funeral Home. Lynda Best, Alen Best, Donald Higdon, and Taffy Griffin Higdon (hereinafter collectively referred to as the “Best Group”) collectively owned 82.5% of the business, while Kenneth Griffin (“Griffin”) owned 12.5% of the business. Griffin was the director and embalmer at the funeral home.
*335 On April 27, 2012, the Best Group and Griffin entered into a purchase and sale agreement whereby Griffin agreed to purchase the Best Group’s 82.5% shares for $82,500.00. The stock of Allen Best and Lynda Best amounted - to 35 shares at $1,000.00 per share for '. a total of $35,000.00. Donald Higdon’s stock amounted to 35 shares at $1,000.00 per share for a total of $35,000.00. - Taffy Griffin’s stock amounted to 12.5 shares ,at $1,000.00 per share for a total of $12,500.00. The agreement was scheduled to go into effect on May 1, 2012. Pursuant to this agreement, Griffin would Umake the first payment by June 7, 2012. At the timé of trial, Griffin had not paid the Best Group for their shares.
According to the LTG minutes, the Best Group called an emergency meeting on June 7, 2012, at the home of member Allen Best. Donald Higdon, Taffy Griffin, Allen Best, and Lynda Best were present. Taffy Griffin reported that at' Griffin’s request, she shut down the business in accordance with the state embalmer’s rules on June 7, 2012. The parties agreed that Donald Higdon would be the sole signer of checks from the existing account, and that Griffin was to open a separate account for all bills and expenses accumulated on and after May 1,2012.
The Best Group cancelled Griffin’s existing debit card for the funeral home so the existing account could “stay balanced,” but Griffin reinstated it after May 1, 2012, and continued to use it under the name of Griffin Funeral Home. Additionally, Griffin continued to withdraw money from the old account without the Best Group’s permission or knowledge, causing overdrafts. Griffin also changed the locks at the funeral home, and arranged for the mail to be forwarded to him.
On May 25, 2012, Griffin withdrew $3,464.00 from the funeral home account to pay for a fine he incurred, and a license to reopen the funeral home using two new separate corporations, Simply Cremations, LLC, and Pigs Flying, LLC
On November 14, 2012;’the Best Group filed suit to recover the sums due under the purchase and sale agreement. The trial took place on March 30,2015.
laOn April 13, 2015, the trial court found that Griffin breached the contract entered into by the,parties on April 27, 2012, for the sale of'the-funeral home. Judgment was rendered in favor of the Best Group in the amount of $99,589.45, which included $82,500.00 for breach of contract relative to the ' sale of the funeral home, and $17,089^45 for the plaintiffs’ portion of account receivables pursuant to the purchase and sale agreement.- Griffin appeals.
LAW AND DISCUSSION
Griffin argues that the trial court erred in determining that the parties had not terminated/dissolved the contract, and in awarding the value of the outstanding receivables on a contract that was terminated/dissolved. Moré specifically, Griffin argues that the parties terminated/dissolved the contract-by their actions on or after June 7, 2012, when they 'closed the funeral home.
A contract is an agreement by two or more parties whereby obligations are created, modified or extinguished. La. C.C. art. 1906. Contracts have the effect of law for the parties. La. C.C. art. 1983. The interpretation of a contract is the determination of the common intent of the parties, giving the words of the contract their generally prevailing meaning. La. C.C. arts. 2045, 2047; Campbell v. Melton, 2001-2578 (La.5/14/02), 817 So.2d 69. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in *336 search of the-parties’ intent. La. C.C. art. 2046. Testimonial or other evidence may not be admitted to negate or vary the contents of a written > instrument, but in the interest of justice, such evidence may be admitted to prove such | ¿circumstances as a vice, of consent or to prove that the written act was modified by a subsequent and valid oral agreement. La. C.C. art. 1848; Driver Pipeline, Co. v. Cadeville Gas Storage, LLC, 49,375 (La.App.2d Cir.10/1/14), 150 So.3d 492, writ denied, 2014-2304 (La.1/23/15), 159 So.3d 1058.
A,party who signs a written document is presumed to know its contents and cannot escape its obligations by claiming that the other party did not explain it or that he failed to read; it or understand it. Coleman v. Jim Walter Homes, Inc., 2008-1221(La.3/17/09), 6 So.3d 179; Hanlon v. Monsanto Ag Products, LLC, 48,010 (La.App.2d Cir.10/9/13), 124 So.3d 535.
The courts are bound to enforce the contract as written. Shepard v. Phycor of Ruston, Inc., 29,181 (La.App.2d Cir.5/7/97), 711 So.2d 288; Cooper v. Olinde, 565 So.2d 978 (La.App. 1st Cir.1990), writ denied, 569 So.2d 966 (La.1990). In an action for breach of contract, as in all civil matters, the burden of proof is upon the plaintiff to establish by a, preponderance of the elements essential to recovery. Adams v. Commercial Nat. Bank in Shreveport, 27,360 (La.App.2d Cir.9/27/95), 661 So.2d 636; Bond v. Allemand, 632 So.2d 326 (La.App. 1st Cir.1993), writ denied, 94-0718 (La.4/29/94), 637 So.2d 468.
A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). To reverse the trial court’s determinations, the appellate court must find that a reasonable | ¡factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Id. In the purchase agreement, Griffin agreed to be personally responsible for the $82,500,00 payment. Griffin also agreed that after May 1, 2012, he would be responsible for any purchases made, and all .debts incurred, under the name of LTG. Further, Griffin' agreed; to give the Best Group 82.5% of any money received after May 1, 2012, for sales and services rendered before that date.
After reviewing the record in its entirety, this court concludes that the record amply supports the trial court’s finding that the parties entered into a valid purchase agreement for the funeral home that they collectively owned, and in finding that Griffin failed to pay the money 'owed under the contract.
At trial, Griffin asserted that he paid bills and expenses: owed by the Best Group,-.and as'a result, this matter should result in a “wash.” However, he failed to file any legal pleadings to recover his expenses, nor did he allege any affirmative defenses in, this matter.
Contrary to Griffin’s assertions, the record is void of any-indication that the contract had been terminated/dissolved. The evidence presented at trial clearly showed that Griffin had an obligation to pay the Best Group pursuant to the agreement, but chose not to do so. Griffin testified that he signed the purchase and sale agreement, and that “zero monies” had been paid in completion of this contract. By way of discovery, the Best Group requested information from Griffin, regarding the accounts receivable at the funeral home, to no avail.
IfiGriffin testified that he entered the purchase and sale agreement voluntarily, and that he understood the contents of *337 these documents before he signed them. At the time of trial, Griffin even testified that he was still operating the funeral home as “Griffin Funeral Home.”
For these reasons, we find that the trial court did not err in its findings, and that Griffin’s assignments' of error lack merit.
CONCLUSION
For the reasons expressed, the trial court’s judgment is affirmed. All costs are to be paid by Kenneth Griffin.
AFFIRMED.

. Kenneth Griffin and Taffy Griffin were married in 1988, and divorced in 2010.