Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,355-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SHREVEPORT BOLT AND                    Plaintiff-Appellee
SCREW CO., INC.

versus

ACCESS.1 COMMUNICATIONS            Defendant
CORP.-NY

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 161,303

Honorable Michael Nerren, Judge

* * * * *

MCCABE LAW FIRM, LLC                    Counsel for
By: Ryan M. McCabe                      Defendant-Appellant,
                                        VB-S1 Assets, LLC

ROBERT WAYNE COOK                       Counsel for
                                        Plaintiff-Appellee

* * * * *

Before STEPHENS, HUNTER, and MARCOTTE, JJ.

**HUNTER, J.**

Defendant, VB-S1 Assets, LLC, appeals a district court judgment which denied, in part, its motion for summary judgment, and determined the lease "shall terminate at the conclusion of current renewal period on May 31, 2029." For the following reasons, we reverse the portion of the judgment which denied the motion and grant summary judgment in favor of VB-S1 Assets, LLC.

**FACTS**

Plaintiff, Shreveport Bolt and Screw, Inc. ("Shreveport Bolt"), is the owner of immovable property situated in Bossier Parish. Joseph Cook ("Mr. Cook"), the president and owner of Shreveport Bolt, died on January 18, 2013. Prior to his death, he executed a last will and testament, in which he purportedly left his entire estate to his daughter, Dianne Cook. Probate proceedings commenced, and Dianne Cook was appointed independent administrator of the succession and later obtained a judgment of possession placing her in possession of her father's property. Mr. Cook's sons, David and Robert Cook, filed a petition to annul the will. Following a hearing, the district court took the matter under advisement.

While the succession matter was under advisement, on May 1, 2014, Dianne Cook, on behalf of "SB&S, Inc.," signed an agreement to lease the property to Access.1 Communications Corp.-NY ("Access.1"). The lease was for a five-year term, June 1, 2014, through May 31, 2019, and provided four successive five-year options to extend, which extended the term of the lease to 25 years. On April 6, 2015, Access.1 assigned the lease at issue to Alpha Media, LLC, which on November 3, 2015, assigned it to VBA II,

LLC. In 2016, VBA II, LLC was merged into another entity, VB-S1 Assets, LLC ("VB-S1").[1]

Ultimately, Mr. Cook's last will and testament was annulled, the judgment of possession was vacated, and David and Robert Cook were declared to be heirs to Mr. Cook's estate, which included ownership of Shreveport Bolt and the property in dispute herein. At some point in 2015, the David and Robert Cook learned of the existence of the lease executed by Dianne Cook, and in 2017, they obtained an order in the succession proceedings which authorized them to open and maintain an escrow account on behalf of the estate and deposit rental payments "to be held pending determination of the validity of such lease agreement in further proceedings herein." However, David and Robert Cook did not move to invalidate the lease agreement at that time.

On December 23, 2019, Shreveport Bolt, through its officers and shareholders, David and Robert Cook, filed a petition for declaratory judgment, seeking a judgment declaring the lease an absolute nullity, or, in the alternative, a relative nullity.[2] Shreveport Bolt named Access.1 as the defendant and alleged, *inter alia*: (1) SB&S, Inc. did not exist as a legal entity is not the record owner of the property and did not have the capacity to enter into a binding lease agreement; (2) David and Robert Cook were declared the final heirs to Shreveport Bolt; (3) Dianne Cook was not an officer or director of Shreveport Bolt, and she did not have the authority to

---

[1] Neither VBA II, LLC nor VB-S1 are owned by or affiliated with Alpha Media, LLC or Access.1 Communications Corp.-NY.

[2] On March 1, 2021, Shreveport Bolt and Screw Co., Inc. was converted to "Shreveport Bolt and Screw, LLC" and on November 2, 2023, Shreveport Bolt and Screw, LLC was substituted as plaintiff.

2

enter into a binding contract on behalf of the company; and (4) David and Robert Cook did not become aware of the lease between defendant and SB&S, Inc. until March 2015. Subsequently, Shreveport Bolt amended the petition to substitute VB-S1 as the defendant.

On April 24, 2023, Shreveport Bolt filed a rule to show cause why its petition for declaratory judgment should not be granted. Shreveport Bolt attached exhibits to the motion, including the lease agreements, the judgment of possession from the Succession of Joseph Cook, and documents from the Louisiana Secretary of State. The district court ordered VB-S1 to show cause "why the Petition for Declaratory Judgment should not be granted and why the Lease should not be deemed absolutely and/or relatively null, and why all costs associated with this litigation should not be assessed to the Defendants."

On September 11, 2023, VB-S1 filed a motion for summary judgment, seeking dismissal of plaintiff's petition. VB-S1 acknowledged that SB&S, Inc. is not an independent legal entity; however, it noted Shreveport Bolt had been using SB&S, Inc. as a d/b/a (doing business as) for decades, as demonstrated by the cash sale deed dated October 31, 1997, and former leases executed and filed in the public records.[3] VB-S1 also argued Shreveport Bolt's claims are prescribed under La. R.S. 9:5646(A)(1) and 9:5632 because the lawsuit was filed over five years after the lease was recorded in the public records, and over two years after David and Robert

---

[3] For example, in January 1993, Shreveport Bolt d/b/a SB&S, Inc., entered into an agreement to lease the property to Gary D. Camp/Access.1 Communications, Shreveport, LLC. On October 31, 1997, a cash sale deed was executed, transferring the property in dispute from its previous owner to Shreveport Bolt d/b/a SB&S, Inc.; the sale was recorded in the conveyance records on February 4, 1998.

Cook gained actual knowledge of the lease. In the alternative, VB-S1 asked the court to enforce an alleged settlement it had reached with Shreveport Bolt. Documents submitted in support of the motion for summary judgment included the deed to the property, the 1993 lease between Joseph Cook/SB&S, Inc. and Gary D. Camp/Access.1 Communications, Shreveport, LLC, and the lease executed by Dianne Cook on behalf of SB&S, Inc.

VB-S1 also filed a motion to enforce settlement alleging the parties had reached an agreement, by which Shreveport Bolt agreed to dismiss its claims in exchange for VB-S1's agreement to purchase the property for $182,500, plus 25% of the gross revenue from future base rent payments from subtenants. According to VB-S1, it accepted Shreveport Bolt's offer, but Shreveport Bolt did not adhere to the agreement.

VB-S1 also submitted the affidavit of Brandy Hill, the director of legal operations of its parent company. Hill attested VB-S1 operates a communications tower on the property subject to the lease and will "incur substantial damages" if the lease is invalidated. She also attested that as tenant, VB-S1 had "completely performed all terms and conditions of the lease, including but not limited to its obligation to pay rent thereunder."

On January 18, 2024, Shreveport Bolt filed an opposition to the motion to enforce the settlement. It argued the evidence of the alleged "settlement" did not meet the terms regarding the promise of a sale of an immovable, which requires an authentic act under private signature. On that same date, Shreveport Bolt also filed an opposition to the motion for summary judgment, arguing its claims had not prescribed because the lease was signed on behalf of a nonexistent entity, SB&S, Inc., and is, therefore,

4

an absolute nullity.  An action for annulment of an absolutely null contract does not prescribe.  La. C.C. art. 2032.  Shreveport Bolt also argued the motion for summary judgment should be denied, and a judgment should be entered declaring the lease a nullity and restoring the parties to the position that existed before the lease was signed.

On February 1, 2024, the district court conducted a hearing on the petition for declaratory judgment, motion for summary judgment, and motion to enforce settlement.  During the hearing, counsel for Shreveport Bolt conceded the issue of Dianne Cook's authority to sign the agreement "would be prescribed under the statute."  However, counsel argued SB&S, Inc., the entity named in the lease, was not a valid legal entity; therefore, the lease should be annulled.  At the conclusion of the hearing, the district court took the matter under advisement.

On January 30, 2024, VB-S1 filed a "reply memorandum in further support of motion to enforce settlement," arguing Shreveport Bolt made an offer to settle the matter, and it accepted the offer.  There are only two requirements for a valid compromise: (1) mutual intention to put an end to litigation; and (2) reciprocal concessions of the parties to adjust their differences.  *Klebanoff v. Haberle*, 43,102 (La. App. 2 Cir. 3/19/08), 978 So. 3d 598.  In this case, once the offer was made and accepted, the matter was fully settled.  However, Shreveport Bolt refused to comply and attempted to "shake down" VB-S1 by demanding an additional $50,000.

Additionally, VB-S1 filed a "reply memorandum in further support of motion for summary judgment."  It argued Shreveport Bolt "has held itself out as 'SB&S, Inc.' in the public records at least eight times over the span of nearly thirty years," and cannot not "use Article 2032 to sidestep its facially

5

prescribed claims." VB-S1 also objected to exhibits filed by Shreveport Bolt in connection with its opposition to the motion for summary judgment.

On February 14, 2024, Shreveport Bolt filed an additional opposition to VB-S1's motion for summary judgment. Again, it argued the lease is an absolute nullity because it was the true owner of the property, and SB&S, Inc. was "a non-existent entity of the worst kind." According to Shreveport Bolt, the motion for summary judgment should be denied because the right to have an absolutely null contract annulled does not prescribe. For the first time, Shreveport Bolt argued it was entitled to "reasonable compensation" for losses sustained because the rental payments were below fair market value for leases of towers in the vicinity.[4]

The district court conducted a hearing on March 21, 2024, during which it heard additional arguments from the parties. Thereafter, the district court granted in part and denied, in part, VB-S1's motion for summary judgment, stating:

> The Court finds the subject lease to be valid in all aspects except the term of the lease. The lease set a five (5) year term beginning June 1, 2014, with automatic renewals every five (5) years for an additional four (4) terms at the sole option of the lessee. The Court finds that a potential twenty-five year lease places an undue burden on the property by removing it from commerce for an onerous [amount] of time.
>
> ***
>
> **IT IS HEREBY ORDERED** that [the] current lease shall remain in full force and effect through the current renewal period (ending May 31, 2029) at the current monthly rent as detailed in the 2014 Lease Agreement.
>
> **IT IS FURTHER ORDERED** that the 2014 Lease Agreement shall terminate at the conclusion of [the] current rental period on May 31, 2029.

---

[4] On April 29, 2024, Shreveport Bolt filed a "final brief" arguing the lease should be declared an absolute nullity.

VB-S1 appeals.

**DISCUSSION**

VB-S1 contends the district court erred in denying, in part, its motion for summary judgment. It argues the lawsuit filed by Shreveport Bolt "is prescribed under at least two statutes because it was filed five years after the lease was recorded in the public records and over two years after [Shreveport Bolt's] principals had actual knowledge of it."

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. La. C.C.P. art. 966 (A)(1). A genuine issue is one about which reasonable persons could disagree. *King v. Town of Clarks*, 21-01897 (La. 2/22/22), 345 So. 3d 422. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. *Id.* When the motion is made and supported as provided in Art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings but must set forth specific facts showing there is a genuine issue for trial. La. C.C.P. art. 967 (B); *Latour v. Brock*, 23-00262 (La. 6/21/23), 362 So. 3d 405. Appellate courts review motions for summary judgment de novo, using the same criteria that governed the trial court's determination of whether summary judgment is appropriate. *Farrell v. Circle K Stores Inc.*, 22-00849 (La. 3/17/23), 359 So. 3d 467; *Noland v. Lenard*, 55,342 (La. App. 2 Cir. 11/15/23), 374 So. 3d 1133, *writ denied*, 23-01670 (La. 2/14/24), 379 So. 3d 32.

La. C.C.P. art. 966(D)(1) allocates the burden of proof on summary judgment as follows:

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

A lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay. The consent of the parties as to the thing and the rent is essential but not necessarily sufficient for a contract of lease. La. C.C. art. 2668. A lease of a thing that does not belong to the lessor may nevertheless be binding on the parties. La. C.C. art. 2674.

The lease contract itself is the law between the parties; it defines their respective rights and obligations so long as the agreement does not affect the rights of others and is not contrary to the public good. La. C.C. art. 1983; *Carriere v. Bank of Louisiana*, 95-3058 (La. 12/13/96), 702 So. 2d 648; *Highland Clinic v. Dhawan*, 55,240 (La. App. 2 Cir. 9/27/23), 372 So. 3d 390. The interpretation of a contract is the determination of the common intent of the parties, giving the words of the contract their generally prevailing meaning. La. C.C. arts. 2045, 2047; *Best v. Griffin*, 50,445 (La. App. 2 Cir. 2/24/16), 190 So. 3d 333.

When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. The courts are bound to enforce the

8

contract as written. *Coleman v. Jim Walter Homes, Inc.*, 08-1221 (La. 3/17/09), 6 So. 3d 179; *Highland Clinic v. Dhawan*, *supra*; *Best v. Griffin*, *supra*.

La. R.S. 9:5646(A)(1) provides:

Any action to set aside a sale, transfer, lease, mortgage, encumbrance, or any other document by any legal entity or unincorporated association affecting any immovable property located in this state on the ground that the officer, agent, or other representative of the legal entity or unincorporated association signing the document was without authority to do so is prescribed by five years, reckoning from the day the document was recorded in the mortgage or conveyance records, or both, as applicable, of the parish in which the immovable property is located. Nothing contained in this Section shall be construed to limit or to establish a prescriptive period as to any proceeding which may arise between the legal entity or unincorporated association and the person acting in a representative position.

La. R.S. 9:5632 provides, in relevant part:

A. When the legal procedure is defective or does not comply with the requisites of law in the alienation, encumbrance, or lease of movable or immovable property made by a legal representative of a succession, minor, or interdict, provided an order of court has been entered authorizing such alienation, encumbrance, or lease, any action shall be prescribed against by those claiming such defect or lack of compliance after the lapse of two years from the time of making such alienation, encumbrance, or lease.

B. This prescriptive period shall also apply to an alienation, encumbrance, or lease of movable or immovable property by an independent succession representative provided an order of court has been entered authorizing independent administration.

In the instant case, the lease agreement was signed on May 1, 2014, and was recorded in the Bossier Parish conveyance records on June 3, 2014. The plaintiff did not file the petition for declaratory judgment until December 23, 2019, more than five years after the lease was recorded in the public records. Nevertheless, the district court deemed the lease was "valid in all aspects except the term of the lease." We find the court erred in

9

concluding the term of the lease was invalid and finding the "lease shall terminate at the conclusion of [the] current rental period on May 31, 2029."

Perpetual leases are disfavored by the law and are void from their inception. *Regions Bank v. Questar Expl. & Prod. Corp.*, 50,211 (La. App. 2 Cir. 1/13/16), 184 So. 3d 260, *writ denied*, 16-0498 (La. 5/2/16), 206 So. 3d 882. La. C.C. art. 2678 provides:

> The lease shall be for a term. Its duration may be agreed to by the parties or supplied by law.
>
> The term may be fixed or indeterminate. It is fixed when the parties agree that the lease will terminate at a designated date or upon the occurrence of a designated event.
>
> It is indeterminate in all other cases.

La. C.C. art. 2679 provides

> The duration of a term may not exceed ninety-nine years. If the lease provides for a longer term or contains an option to extend the term to more than ninety-nine years, the term shall be reduced to ninety-nine years.
>
> If the term's duration depends solely on the will of the lessor or the lessee and the parties have not agreed on a maximum duration, the duration is determined in accordance with the following Article.

The lease at issue provides, in relevant part:

## LEASE

> THIS AGREEMENT OF LEASE (this "Lease") is made and entered into this 1st day of May 2014, by and between:
>
> > S B & S, INC., *** (hereinafter referred to as "Lessor"), and
> >
> > ACCESS.1 COMMUNICATIONS CORP.-NY *** (hereinafter referred to as "Lessee")
>
> 1.
> For and in consideration of the covenants and agreements hereinafter set forth, Lessor hereby leases, demises and lets

10

unto Lessee that portion of property outlined in the attached exhibit and described as follows (the "Leased Premises):

\*\*\*

2.

The initial term of this Lease shall commence on June 1, 2014, and shall terminate on May 31, 2019, subject to the automatic renewals of this Lease provided in Article 8.

\*\*\*

8.

This Lease shall automatically renew upon all of the same terms and conditions as are set forth herein four (4) additional five (5) year periods, unless Lessee serves notice of its election not to renew this Lease not less than six (6) months prior to the expiration of any applicable Lease period. The total monthly rent amount for the new term shall increase 15% from the previous five-year term monthly lease amount at the commencement of each renewal term. \*\*\*

9.

It is agreed that any holding over by the Lessee after expiration of this Lease or the last renewal period, if any, shall be construed as a tenancy from month to month. Said month to month tenancy may be terminated upon thirty (30) days' notice by either the Lessor or Lessee.

\*\*\*

Our review of the lease reveals the term is not perpetual. Pursuant to the parties' agreement, the primary term of the lease was five years and included four additional five-year option periods. With the exercise of all four option periods, the lease extends to 25 years and will not exceed 99 years. Consequently, we find the district court erred in denying, in part, the motion for summary judgment and amending the agreed-upon term of the lease. We hereby reverse that portion of the district court's judgment, and we grant summary judgment in favor of VB-S1 Assets, LLC.

**CONCLUSION**

For the reasons set forth above, the judgment of the district court is reversed, and summary judgment is hereby granted in favor of defendant, VB-S1 Assets, LLC. Costs of this appeal are assessed to plaintiff, Shreveport Bolt and Screw Co., Inc.

11

**REVERSED AND RENDERED.**